BLASZKE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 164. Argued May 5, 1975.—Decided June 16, 1975.*
(Also reported in 230 N. W. 2d 133.)

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Robert J. Paul,* assistant state public defender, and oral argument by *Mr. Paul.*

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Victor A. Miller,* attorney general.

HEFFERNAN, J.    The defendant, Theodore Blaszke, was interrogated while in custody in respect to a theft. When the subject of the theft was first brought up, Blaszke, after receiving the full *Miranda* warnings, stated that he wanted to talk to a lawyer. After all police interrogation had ceased, Blaszke initiated a conversation in which he stated he was prepared to proceed to give a confession in respect to the theft.

The issue on this appeal is whether Blaszke knowingly and understandingly waived his right to counsel and his right to remain silent when he confessed his involvement in the theft to a Brown county sheriff's department investigator less than thirty minutes after he had stated that he wanted the services of a lawyer.

The facts raise a question of the voluntariness of his confession and also a question of whether the permission he gave the officer to make a search of his automobile was uncoerced and freely given.

The trial judge found that the confession was freely given and the consent to search was not coerced. The trial judge denied the motion to suppress the confession and denied the motion to suppress the evidence secured as a result of the search. We affirm.

At about 11 a.m. on Friday, May 4, 1973, Theodore Blaszke was taken into custody by the Brown county sheriff's department in connection with the theft of two calves. After interrogation, he confessed to the theft and gave a statement acknowledging his guilt. At approximately 4 o'clock that afternoon, Blaszke was brought before a court commissioner for an initial appearance on that charge. At that time, he was advised by the commissioner of his right to an attorney, and bail was set in the amount of $1,500. In view of the fact that the attorney requested by Blaszke was out of town, the initial appearance was continued until Monday, May 7, 1973. Blaszke was confined to jail pending the completion of the initial appearance.

The proceedings in respect to the initial appearance on the charge of calf theft are not directly involved in this appeal. However, the confession in that case and the initial appearance made on Friday, May 4th, explain the reason for Blaszke being in custody on May 6th, the date on which the confession relevant to this appeal was given.

On May 6th, while Blaszke was awaiting the completion of the hearing on initial appearance the next day, Robert E. Tonn, an investigator for the sheriff's department, took Blaszke from the jail to the captain's office to question him in respect to another violation—a theft of saddles and bridles. When Tonn took Blaszke to the office, he properly administered the *Miranda* warnings to Blaszke. Thereupon Blaszke signed a waiver of his right to counsel and of his right to remain silent during the custodial interrogation. The evidence is undisputed, however, that Tonn did not advise Blaszke that he wished to interrogate him in respect to a theft other than that for which he had been charged on the previous Friday. Blaszke assumed, when he signed the waiver, that he was merely continuing the interrogation in respect to the theft of the calves. When Tonn told Blaszke that he had information that might implicate him in the theft of some saddles and bridles, however, and also that he had enough information to obtain a search warrant for Blaszke's car, Blaszke's response was that he wished to talk with his attorney. Thereupon Tonn immediately ceased all efforts to question Blaszke.

While walking back to the jail with Investigator Tonn, Blaszke stopped and initiated a conversation with Tonn in respect to his bond. He stated that he was worried that, if he gave a statement in respect to an additional crime, his bond would be raised. He had earlier expressed his concern, during the hearing at the initial appearance, of the importance of being at home with his wife. Tonn told him that, on the basis of his, Tonn's, past experience,

an additional statement would not affect the amount of the bond. Blaszke thereupon, on his own initiative, said that he would give a statement and also consent to the search of his automobile. Blaszke and Tonn then returned to the captain's office, where the confession of the theft was given and a consent to search the car was executed. Less than thirty minutes elapsed from the time Blaszke first told Tonn that he wanted a lawyer until the time he had completed his confession and signed the consent to search. The search revealed a saddle and several bridles in Blaszke's vehicle.

On the following day, May 7th, Blaszke appeared in court for the completion of the initial appearance; and subsequently, on May 9th, Blaszke was charged with the theft of the saddles and bridles. Although he was initially charged with a felony theft, the bond remained in the sum of $1,500, and Blaszke was released from jail on May 9, 1973.

Subsequently, prior to trial, Blaszke moved to suppress the evidence secured in the search of the car on the ground that the consent was not freely given. He also moved to suppress the May 6th statement on the ground of coercion. A *Goodchild* hearing on these motions was held on August 7 and 8, 1973. The trial judge, without making specific findings of fact, concluded that the consent to search was freely given and Blaszke's confession was not involuntary. Thereafter, Blaszke pleaded guilty to the charge, which was reduced to a misdemeanor. He was sentenced to one year in the Wisconsin State Reformatory for the theft of the saddles and bridles, which sentence was to be served concurrently with a three-year term for the theft of the calves and a three-year term on a burglary conviction.

Subsequently, it was determined that Blaszke had been erroneously sentenced, in that the maximum provided by sec. 943.20 (3) (a), Stats., for misdemeanor theft was

six months. Accordingly, the original sentence imposed on November 15, 1973, following the plea of guilty, was vacated, and on March 14, 1974, he was resentenced to a term of six months in the county jail.

The writs of error were taken to review the original judgment which followed the pleas of guilty on November 15, 1973, and the order of March 14, 1974, which resentenced Blaszke to six months. The writs of error in this case are concerned only with the conviction that followed the plea of guilty for the theft of the saddles and the bridles, to which crime Blaszke had confessed on May 6th.

Under Wisconsin procedure, the burden is on the state to establish the volutariness of a confession beyond a reasonable doubt. *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 264, 133 N. W. 2d 753. In *State v. Carter* (1966), 33 Wis. 2d 80, 90, 91, 146 N. W. 2d 466, we said, in respect to a *Goodchild* hearing held for the purpose of determining *Miranda* compliance, that this court on review would not upset a trial court determination unless it appeared that the findings made were against the great weight and clear preponderance of the evidence. In the instant case, however, the trial judge did not make detailed findings. Accordingly, we are obliged to examine the record to determine *ab initio* whether the trial judge, on the basis of the evidence before him, could properly have determined that the confession was voluntary and uncoerced.

In the instant case, what transpired at the time the confession was given is substantially undisputed. Tonn and Blaszke agree about what happened on May 6, 1973, before the time the confession was given.

As did the United States Supreme Court in *Davis v. North Carolina* (1966), 384 U. S. 737, 86 Sup. Ct. 1761, 16 L. Ed. 2d 895, on the basis of undisputed facts, we examine the record to make an independent determination

of the ultimate issue of voluntariness. On the basis of that examination, we conclude that the confession was voluntary.

Blaszke was properly given the *Miranda* warnings on May 6th, prior to the time he made his confession. Nevertheless, although Blaszke initially stated he wanted an attorney, a confession resulted within thirty minutes. Arguably, therefore, these facts come within the situation discussed in *Miranda v. Arizona* (1966), 384 U. S. 436, 475, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, and later followed by this court in *Sharlow v. State* (1970), 47 Wis. 2d 259, 270, 177 N. W. 2d 88:

" 'If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.' "

Nevertheless, whether or not we proceed under that special burden, the test of voluntariness remains the same—was the confession voluntary in the "totality of the circumstances." *State v. Wallace* (1973), 59 Wis. 2d 66, 207 N. W. 2d 855; *State v. Schneidewind* (1970), 47 Wis. 2d 110, 176 N. W. 2d 303. We cannot conclude that the situation here comes directly within the purview of the admonition of *Miranda,* for this was not an interrogation that "continued." Rather, it was an interrogation that was recommenced upon the initiative of the defendant. Nevertheless, we conclude that the state properly discharged even the "heavy burden" placed upon it under the circumstances that *Miranda* contemplates.

Blaszke had received the full and complete *Miranda* warnings, and we are mindful of the approach outlined in *United States v. Frazier* (D. C. Cir. 1973), 476 Fed. 2d 891, in which the court pointed out that, where police follow the *Miranda* procedure carefully, appellate courts

should be slow to mandate additional responsibilities. It is undisputed that, in accordance with the most strict interpretation of *Miranda*, the warnings had been properly administered, interrogation had totally ceased, and it was upon the initiative of the defendant, not the police, that questioning was commenced for the first time.

The defendant on this appeal argues that the voluntariness of the confession was not established, because the state had failed to prove that Tonn, the officer who took the confession, was telling the truth when he told Blaszke that he had information that Blaszke had possession of saddles and that he had enough information to obtain a search warrant of Blaszke's car.

The argument of the defendant is that, had Tonn such information, it would have been incorporated in the complaint. The complaint, however, does not recite such additional information, and instead merely relies upon the fact of the theft and the confession of the defendant. Defendant's conclusion that, because this additional information was not put in the complaint the state did not have the additional information, is a *non sequitur*.

Once the officer had Blaszke's confession, no other information than that confession and the fact of the theft was necessary to show probable cause. Moreover, it is undisputed that, at the *Goodchild* hearing, Tonn testified that he did indeed have an informant and that he was not undertaking a "fishing expedition" in telling Blaszke that he had other information. There is no evidence that any deceit or misinformation was employed by the state in respect to the statement that the investigator had other information that would involve Blaszke in the theft of the saddles.

We point out, without deciding the question since it is not posed under the facts of this case, that there is substantial authority that giving a defendant false information does not in itself make a confession inadmis-

sible on the grounds of involuntariness. *See: Frazier v. Cupp* (1969), 394 U. S. 731, 737, 89 Sup. Ct. 1420, 22 L. Ed. 2d 684, and *United States v. Poole* (D. C. Cir. 1974), 495 Fed. 2d 115, 121.

Blaszke also contends that the waiver of counsel, the giving of the confession, and the permission to search were illegally obtained because of the inherently coercive situation that arose when, in response to Blaszke's question, the officer told him that, on the basis of his experience, the bond would probably not be raised even if Blaszke gave an additional statement involving him in another crime.

While it is true that the sheriff's officer was speaking in respect to matters on which he could not express an authoritative opinion and the confession to another crime might well have led to an increase in the bond, in fact it was not increased. More important, however, there is nothing to show that the officer was speaking anything but the truth when he stated that in his experience the bond would not be increased. Certainly, none of the language which the United States Supreme Court used in *Miranda* in respect to possible interrogational abuses is appropriate here. There was no "deceptive stratagems." (P. 455) The police did not "persuade, trick, or cajole him." (P. 455) Nor was there any evidence that the accused was "threatened." (P. 476)

Additionally, the defendant argues that the bond information given by Tonn was coercive, because there was evidence that the defendant was having marital troubles and he was concerned about the importance of being with his wife as soon as possible. This very argument and the strong evidence of the defendant's personal concern about his wife rather clearly indicate that the defendant's about-face decision to give a confession was motivated by concerns, personal to himself, and was not the product of police coercion.

The record shows that Blaszke was consistently concerned about the amount of the bail, so that he could be released from jail promptly. His feeling of the necessity for prompt release on bail was not manifested for the first time after Tonn's information. When appearing before the court commissioner on May 6th, he stated that he was scheduled to begin work on a new job on May 11th. At the *Goodchild* hearing, he said that he and his wife were having personal problems and he was anxious to get out of jail because of those problems.

While Tonn's responsive information in respect to the bail remaining at the same amount might well have triggered Blaszke's subjective motivation for a prompt confession, there is absolutely no evidence to show that this concern was in any way manipulated by the state to coerce a confession.

We have in past cases distinguished factors that motivate a defendant to plead guilty or to confess from those situations where the coercive factors have been the product of the state's conduct. What was said by this court in *Rahhal v. State* (1971), 52 Wis. 2d 144, 151, 187 N. W. 2d 800, is appropriate here, although that case was concerned with an allegedly coerced guilty plea. Therein we said:

". . . a plea otherwise valid is not involuntary because induced or motivated by the defendant's desire to get the lesser penalty. A voluntary and intelligent choice always involves two or more alternatives, each having some compelling power of acceptance. The fact that a defendant must make a choice between two reasonable alternatives and take the consequences is not coercive of the choice finally made. The distinction between a motivation which induces and a force which compels the human mind to act must always be kept in focus."

We also pointed out in *Drake v. State* (1969), 45 Wis. 2d 226, 233, 172 N. W. 2d 664, that a defendant's subjective desire to plead guilty to avoid the implication of

his wife was a self-imposed coercive element which did not destroy the voluntariness of his action.

In accordance with these established principles and with the evidence pointed out to us by defendant's counsel, it is undisputed that the decision to give a confession was induced by the defendant's subjective motivation and was not compelled by any coercive action, or by any trickery, or by any threats or promises made by the state. On the basis of our independent examination of the record, we conclude that the confession and the consent to the search of the automobile were freely given and both the confession and the fruits of the consented search were properly admitted into evidence.

The state has argued that this court should follow the concurrent sentence doctrine which has been adopted in the federal system. In the federal system, appellate courts, as a matter of discretion, may refuse to review a conviction, the sentence for which has been imposed concurrently with other valid sentences. *Benton v. Maryland* (1969), 395 U. S. 784, 791, 89 Sup. Ct. 2056, 23 L. Ed. 2d 707; *United States v. Hamilton* (7th Cir. 1970), 420 Fed. 2d 1096, 1099. We decline to adopt the concurrent sentence doctrine.

While in the instant case the sentence for the conviction appealed from is being served with other concurrent sentences that have not been reversed, the federal cases which invoked the doctrine involved other concurrent sentences that had already been affirmed. *E.g.,* *United States v. Cilenti* (2d Cir. 1970), 425 Fed. 2d 683, and *Hamilton, supra.*

In the instant case, the two convictions carrying the concurrent sentences have not been appealed. We therefore decline to consider the concurrent sentence doctrine in this case. By declining to consider in this case for the reasons stated, we do not intimate that we would accept that doctrine even in a situation where the other con-

current sentences had been affirmed. A decision in that respect is subject to possible future consideration by this court.

*By the Court.*—Judgment and order affirmed.