GRENNIER, Plaintiff in error, v. STATE,
Defendant in error.

*No. State 225 (1974). Argued September 9, 1975.—Decided October
28, 1975.*
(Also reported in 234 N. W. 2d 316.)

For the plaintiff in error there was a brief by *Howard B. Eisenberg*, state public defender, and *Alvin E. Whitaker*, assistant state public defender, and oral argument by *Mr. Whitaker*.

For the defendant in error the cause was argued by *David J. Becker*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

HEFFERNAN, J.  Grennier was found guilty by a jury of the first-degree murder of a teen-age girl.  On this appeal he seeks a reversal of the judgment and of the order denying him postconviction relief.  He bases his request for a new trial on the ground that the confession given at the Oak Creek police department should have been excluded from evidence because the *Miranda* admonitions given did not explicitly advise him of the right to counsel at state expense during the interrogation.  He also claims that the state failed to prove beyond a reasonable doubt that the conduct of the defendant caused the death of the victim, and that he was denied due process of law when the same jury sequentially determined that the defendant was guilty of the intentional acts charged and then determined that the defendant was criminally responsible for those acts.

Grennier also contends that there has been a miscarriage of justice and that a new trial should be ordered.

We conclude that each of these issues must be decided adversely to the defendant's contentions.  The judgment and the order are affirmed.

The record shows that the defendant Grennier was apprehended by two Milwaukee policemen at the scene

of a burglary on West Wisconsin Avenue. Immediately upon the apprehension of the defendant, Patrolman Kubacki informed him of his constitutional rights in accordance with *Miranda*. He was not interrogated at that point in respect to the burglary. However, en route to the city jail, Grennier spontaneously informed the police officers that he had killed a "teen-age chick" some time before and that the body had already been found. It is undisputed that this statement was completely volunteered.

The initial arrest took place at about 3 a.m. on the morning of January 23, 1973. At 6:50 a.m., Grennier was questioned at the Milwaukee police department after again being advised, correctly, of his rights under *Miranda*. A confession was then made admitting the burglary for which the defendant had been apprehended.

When the confession in respect to the burglary was completed, one of the police officers asked the defendant about the statement made in the squad car in respect to the killing of a girl. The police officer again informed the defendant of his rights under *Miranda* and asked him if he wished to make a statement about the girl's death. The defendant began to make a statement about the murder when the officer stopped him. Interrogation was interrupted for a few minutes so that Detective Ronald Mehl, who was more familiar with the murder case, could be present.

After Mehl arrived, the defendant was again fully advised of his rights under *Miranda*. Thereafter, the defendant made a lengthy and detailed verbal statement admitting the killing of a young girl in Oak Creek the previous June. This oral confession was completed at 10:20 a.m. on the morning of January 23, 1973. At 10:45 a.m., after once more being advised of his rights under *Miranda*, the defendant made a written statement regarding the burglary.

Because the murder occurred within the jurisdiction of the Oak Creek police department, the defendant was

then taken to Oak Creek, where he was questioned by detectives of that department. He was there again advised of his rights—the state contends according to *Miranda*—and he then signed a waiver stating that he knew his rights and that he wished to proceed with the interrogation without the presence of a lawyer.

An oral confession was commenced by the defendant at 12:40 p.m. At that juncture, one of the Oak Creek policemen asked the defendant if he would permit a stenographic reporter to take down the statement. Grennier consented. Shortly before the stenographic confession was made, the defendant again was advised of his rights under the Oak Creek version of *Miranda*. He again made a detailed confession of the murder of the girl in Oak Creek. This confession was substantially a repetition of that given to the Milwaukee police department.

Prior to trial, the defendant's counsel asked that a *Goodchild* hearing be held to determine whether the confession was voluntary and whether the admonitions required by *Miranda* were properly given. The trial judge, following a hearing, wrote a lengthy and detailed memorandum opinion in which he found all the confessions, with the exception of one not involved in these proceedings, to be voluntary and in full compliance with the requirements of *Goodchild* and of *Miranda*. Thereafter, he made formal and detailed findings of fact and conclusions of law in which he concluded, on the basis of the record, that in respect to each of the confessions Grennier was:

". . . properly and meaningfully advised, beyond a reasonable doubt, of his constitutional rights relating to his right to remain silent, his right to retain counsel and to have counsel present if he chooses to respond to the questions asked of him, his right to have counsel appointed for him if he be without funds, and his right to terminate the interviews at any time he chooses."

The trial judge also concluded:

"That from the totality of circumstances all of such statements, interviews, confessions, written or oral, were made freely, voluntarily and understandingly by the defendant, without promise or coercion, are trustworthy in character and therefore are constitutionally antiseptic."

On this appeal we review the findings and conclusions of the trial judge in light of the facts of record. We recently said in *Blaszke v. State* (1975), 69 Wis. 2d 81, 86, 230 N. W. 2d 133:

"Under Wisconsin procedure, the burden is on the state to establish the voluntariness of a confession beyond a reasonable doubt. *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 264, 133 N. W. 2d 753. In *State v. Carter* (1966), 33 Wis. 2d 80, 90, 91, 146 N. W. 2d 466, we said, in respect to a *Goodchild* hearing held for the purpose of determining *Miranda* compliance, that this court on review would not upset a trial court determination unless it appeared that the findings made were against the great weight and clear preponderance of the evidence."

In conformance with that test, we conclude that each of the confessions was properly admissible. They were voluntarily made, and the state sustained its burden to show voluntariness beyond a reasonable doubt.

In respect to the confessions elicited by the Milwaukee police department, there was no contention that the *Miranda* warnings were inadequate. Rather, it is argued by Grennier that his mental and physical condition at the time of the confessions was such that they could not be voluntary.

In support of that position, Grennier points out that, during the interrogation process, he told his questioners that he needed help. Police Officer Domagalski testified that, at the outset of the interrogation, the defendant was disturbed. Early in the interrogation, the defendant's eyes were glassy and bloodshot, and on one occasion he said he was unable to write.

This court has repeatedly stated the standards that must be met to find a confession voluntary. We have said:

"'The essential question, in determining the voluntariness of a confession, is whether the confession was coerced, or the product of improper pressures exercised by the police. To be admissible into evidence, a confession must be the voluntary product of a free and unconstrained will, reflecting deliberateness of choice.'" *Pontow v. State* (1973), 58 Wis. 2d 135, 137, 205 N. W. 2d 775.

The determination that the confession is voluntary, rather than the result of coercion, must be reached under the "totality of circumstances" standard. *McAdoo v. State* (1974), 65 Wis. 2d 596, 223 N. W. 2d 521; *Blaszke v. State* (1975), 69 Wis. 2d 81, 230 N. W. 2d 133. Under that "totality of circumstances" test, we have said:

"Whether a confession is voluntary 'under all of the circumstances' and therefore in conformance with constitutional standards and safeguards calls for a very careful balancing of the personal characteristics of the confessor with the pressures to which he was subjected in order to induce his statements." *State v. Wallace* (1973), 59 Wis. 2d 66, 81, 207 N. W. 2d 855.

In *Wallace,* the court went on to delineate a number of factors that should be considered in determining whether a confession is voluntary.

*Wallace* held that this court must consider the personal characteristics of the defendant, his age, his education and intelligence, his physical and emotional condition, and his prior experience with the police. Those characteristics are to be balanced against the police tactics and pressures that may have been used to induce the confession—such factors as the length and conditions of interrogation, the psychological and physical pressures, and the inducements, methods, and stratagems which may have been used by the police. Under *Wallace,* it is rele-

vant whether the confessant was unlawfully arrested and whether he was apprised of his right to counsel and his privilege against self-incrimination.

The record shows that Grennier was twenty-four years old, had an eleventh grade education, but also the equivalent of a high school diploma. His IQ was rather high—119. He had had considerable prior experience with the police, having been arrested for battery, disorderly conduct, intoxication, and burglary.

There was evidence that at times the defendant seemed very nervous, but during most of the interrogations there was evidence that he appeared calm and collected. Although there was evidence that, at the time of his arrest, Grennier's eyes appeared glassy and bloodshot, there was no evidence that these symptoms persisted even up to the time of the first interrogation. There was affirmative evidence that the defendant did not appear to be physically sick during any of this period. The defendant did indeed tell the Milwaukee police officers that he needed "help," but it is apparent from the record that Grennier stated that he needed help so he would not commit crimes of this nature again. He never requested medical attention. Although Grennier was told by the Milwaukee officers that he would get help, that help was never conditioned on defendant's cooperation in giving a statement.

Viewing these interrogations from the aspect of police pressures, it is apparent that no threats were made, there were no attempts at physical or mental coercion, and there was affirmative evidence that the officers refrained from any overbearing inquisitorial techniques.

It is uncontradicted that the defendant was not coerced or promised any favors in exchange for his confessions. This can be said in respect to the confessions elicited both by the Milwaukee police department and by the Oak Creek officers.

Putting aside for a moment the question of the *Miranda* warnings, the record shows that the trial court properly concluded that the statements by the defendant were made voluntarily, intelligently, understandingly, freely, and without compulsion. Those findings are supported by the evidence. The trial judge properly applied the totality-of-the-circumstances test, and we sustain his findings and conclusions.

It is undisputed that the *Miranda* admonitions given by the Milwaukee police officers included all the elements of *Miranda*. There is also evidence that those admonitions given in the Milwaukee police department were fully understood and the waiver of the *Miranda* rights was voluntary and intelligent. The quality of the *Miranda* admonitions given by the Milwaukee police department is not questioned on this appeal. Accordingly, if, in the totality of the circumstances, the confessions given to the Milwaukee police were voluntary and intelligent, those confessions were clearly admissible.

The murder confession given to the Milwaukee police officers under constitutionally antiseptic circumstances completely detailed Grennier's intentional killing of the teen-age victim. This confession, together with corroborative evidence presented to the jury, was in itself sufficient to sustain the jury's verdict of guilty beyond a reasonable doubt. The defendant makes the additional assertion, however, that the Oak Creek confession followed a constitutionally infirm *Miranda* warning. That confession, in addition to the Milwaukee confession, was submitted to the jury, and it also detailed Grennier's killing of the teen-age victim.

Although the defendant does not so argue on this appeal, it appears that he implicitly makes the point that, even though the other confessions might be found constitutionally sufficient, the admission of the Oak Creek confession was error and, unless it can be said that the

error was not prejudicial under standards heretofore set by this court, the verdict should be set aside.

We conclude that, under the circumstances revealed in this case, the *Miranda* admonition given by the Oak Creek police was sufficient. That admonition, which was read to the defendant and which he had the opportunity to read, stated:

"Before being asked any questions, you must understand your constitutional rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and have him present with you during questioning. We have no way of giving you a lawyer if you cannot afford one, but one may be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time."

Initially, we should point out that this was the sixth *Miranda* warning that the defendant had received in less than eight hours. All the prior warnings given by the Milwaukee police were, without question, sufficient.

In *Blaszke v. State, supra,* we held that, where the *Miranda* rights were properly administered and where there was then a break in the interrogation, under the totality of the circumstances, it was not necessary to re-administer the *Miranda* warnings when it was undisputed that the defendant understood them. It would be strange indeed for this court to hold that, where within the space of a few hours a defendant has been properly advised of his rights, a subsequent confession would be vitiated by an admonition that was somewhat less than technically perfect. Nevertheless, it is apparent that the warning given the defendant at the Oak Creek police station was arguably confusing and insufficient. The Oak Creek version of the *Miranda* warning was substantially correct but contained the statement:

"We have no way of giving you a lawyer if you cannot afford one, but one may be appointed for you, if you wish, if and when you go to court."

It is argued by the defendant that the effect of this statement was to inform the defendant that no counsel could be appointed for him during the custodial interrogation. If the admonition is so interpreted, it is incorrect, since we have repeatedly stated that it is the duty of the state to provide an attorney for custodial interrogation and that, unless the state does so, the interrogation may not proceed unless the defendant expressly waives his right to have counsel present. The admonition went on, however, to say that the defendant had the right to remain silent and if he had no lawyer present that he had "the right to stop answering questions at any time."

In *Jones v. State* (1975), 69 Wis. 2d 337, 230 N. W. 2d 677, we recently sustained a *Miranda* warning which contained substantially the same questionable language that was used here. In upholding the *Miranda* warning in that case, this court relied upon *United States v. Lacy* (5th Cir. 1971), 446 Fed. 2d 511. We said in *Jones,* discussing *Lacy:*

"The court emphasized that while the defendant was told he was entitled to a court-appointed attorney only 'if and when you go to court,' he was also told that he need not answer any questions until he talked to an attorney." (p. 344)

We concluded in *Jones,* on the basis of the *Lacy* rationale, that the defendant was sufficiently informed of his rights prior to interrogation and that the failure to warn of the right to have counsel appointed immediately was rendered harmless by the additional statement that the defendant had the right to remain silent.

This is the situation in the instant case, and under the rationale of *Lacy* and *Jones,* we find the *Miranda* warn-

ing administered at the Oak Creek police station constitutionally sufficient. We, nevertheless, do not commend its continued use.

The admonitions given by the Milwaukee police department in this case present no ambiguities and are fully in accord with the *Miranda* requirement. It is inexplicable why some police departments, almost ten years after *Miranda,* continue to fail to use the recommended form. Although we said in *Jones* (p. 343), the specific *Miranda* warnings do not have to follow a ritualistic formula, nevertheless, a court should not be forced to determine whether the aberrational *ad hoc* admonitions, such as those administered here by the Oak Creek police department, are sufficient. Good police practice requires that *Miranda* warnings be administered in the form which has previously been set forth by the United States Supreme Court and found acceptable by the courts of this state.

We conclude that the *Miranda* warning given at the Oak Creek police station was minimally constitutionally correct and that the confessions elicited there and at the Milwaukee police department were voluntarily and intelligently made and were properly admitted into evidence by the trial judge.

The defendant also argues that there was not evidence beyond a reasonable doubt that the acts of the defendant actually caused the death of the deceased. In view of the undisputed facts of record, this argument is frivolous and patently fatuous. In his confession, both at the Milwaukee police department and at Oak Creek, defendant stated that he stabbed the victim with a long kitchen knife and inflicted multiple wounds. When she begged him not to kill her, he said he would make it easy for her and inserted the knife in the neck and pushed the point toward the brain. After having a few drinks, he returned to the scene several hours later and found the victim's body on its back, the position in which he had left it. He

stated that the exterior of the body was cold but the interior remained warm. At that time he had intercourse with the corpse and mutilated the body.

The body was not found until a week later. When found, it was in a state of massive decomposition, and the medical examiner stated she could not determine with certainty the cause of death. She did testify, however, that the aorta was totally transected and that there were a number of stab wounds on the victim's body.

In presenting the argument that there is only circumstantial evidence to show that the defendant's act caused the death of the victim, it is apparently urged that the victim died as the result of some intervening force between the time of the original stabbing and the subsequent mutilation. There is, of course, no evidence to support any theory of an intervening killer, and again we point out that the position of the corpse remained unchanged from the time Grennier left the scene until he returned.

The defendant relies upon *State v. Shaw* (1973), 58 Wis. 2d 25, 205 N. W. 2d 132, for the proposition that, before circumstantial evidence may be considered sufficient, it must exclude every other reasonable theory of innocence. The defendant's brief fails to note that *Shaw* stated that the question is one of probability and not of possibility. The circumstantial evidence here need not show that it was impossible for an intervening force to have caused the death of the victim. It must merely rule out any reasonable probability of an intervening force that might support a theory of innocence. It is unreasonable to conclude that, after the victim was stabbed numerous times by the defendant and an attempt was made to pierce her brain, she died not from that attack but from a conjectural intervening force.

There was sufficient evidence to corroborate the essential elements of the defendant's confession. It would be

absurd on the basis of this record to conclude that there was any reasonable hypothesis of innocence that would exclude Grennier's acts as the cause of death. The evidence was sufficient beyond a reasonable doubt.

The defendant also argues that it is a denial of due process to have the same jury decide, first, the question of guilt and, then, the question of sanity. The order of proof is mandated by sec. 971.175, Stats.:

"971.175 **Sequential order of proof.** When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect, there shall be a separation of the issues with a sequential order of proof before the same jury in a continuous trial. The guilt issue shall be heard first and then the issue of the defendant's mental responsibility. The jury shall be informed of the 2 pleas and that a verdict will be taken upon the plea of not guilty before the introduction of evidence on the plea of not guilty by reason of mental disease or defect. . . ."

This precise point has not heretofore been decided by this court. *Schissler v. State* (1904), 122 Wis. 365, 99 N. W. 593, however, discussed the sequential order of proof then required by the statutes. The statute at that time required that the question of sanity should be decided first by the jury and, if the defendant were found not insane, the trial would then proceed before the same jury on the not guilty plea. *Schissler* held that this statute, sec. 4699, Stats. 1898, did not violate a defendant's constitutional right to a trial by jury. The court in *Schissler* said:

"The consideration pressed in behalf of the plaintiff in error on this question is predicated upon the idea that the rights of the accused upon each issue raised by the pleadings were the same as upon two separate trials of the action. But such is not the case. . . . The order in which the inquiry upon the issues should proceed is a matter which may be regulated by the statute, and, if the

course prescribed gives the accused the right to present his defenses fully upon the trial of the case, he is not deprived of any right or privilege . . . .

"Upon these considerations it must be held that the accused was not entitled to have the jury dismissed after the trial of the special issue, and that the court proceeded properly in directing the trial of the main issue before the same jury." (pp. 379, 380)

Although in *Schissler* the court was not addressing itself to the precise issue before the court in this case, its reasoning was based upon the fact that the question of guilt and the question of criminal responsibility were separable and that a jury, having decided one issue, was not foreclosed from fairly deciding that separable issue.

The basic questions here are the same as those presented to the trial court in *Schissler*. The court there concluded that the mental purpose to take a human life is distinct from the question of whether the defendant was responsible for his conduct under the then prevailing *M'Naghten* rule.

We have repeatedly held that these are separable issues:

"[A] court finding of legal insanity is not a finding of inability to intend; it is rather a finding that under the applicable standard or test, the defendant is to be excused from criminal responsibility for his acts." *State v. Hebard* (1971), 50 Wis. 2d 408, 420, 184 N. W. 2d 156.

The Supreme Court of California addressed itself to a similar issue in response to a due process attack on that state's bifurcated procedure. That court said:

" 'We must assume that a fair and impartial jury of intelligent men and women would obey . . . [their] instructions and would therefore hold in reserve their ultimate finding upon the issue of the defendant's sanity until that separate issue and the evidence supporting it had, in the prescribed order of the trial, been committed to it for determination. We are not to assume that such

a jury will cease to be fair and impartial as the cause progresses upon its successive issues, but, on the contrary, we must assume, in the absence of any other showing, that the jury has retained its attitude of fairness and impartiality under the changed procedure as before until the whole cause . . . has been determined.' " *People v. Wein* (1958), 50 Cal. 2d 383, 408, 326 Pac. 2d 457.

We conclude that the rationale of the California Supreme Court is applicable under the present circumstances. There is no reason to believe that a jury properly instructed will so confuse the question of intent and the question of criminal responsibility as to deny a defendant a fair trial on the second issue tried.

We conclude that sec. 971.175, Stats., is constitutional and that the defendant was not denied due process by the sequential order of proof at trial.

We also consider the defendant's argument that the judgment and order herein be reversed in the interest of justice to be frivolous. The evidence, although in part circumstantial, was convincing beyond a reasonable doubt. No error affecting the merits of this case has been called to our attention.

Were this case retried completely in accordance with the wishes of defendant's counsel, it appears most improbable that any jury would return a different verdict. None of the issues brought to the attention of this court suggest that an innocent man was found guilty. Rather, on the basis of the proof adduced in the course of a fair trial, it is apparent that guilt was proved beyond a reasonable doubt.

*By the Court.*—Judgment and order affirmed.