STATE of Wisconsin,
Plaintiff-Respondent,

v.

Yediael Yokrawn BACKSTROM,
Defendant-Appellant.

Court of Appeals

*No. 2005AP1270–CR. Submitted on briefs April 4, 2006.
—Decided May 9, 2006.*

2006 WI App 114

(Also reported in 718 N.W.2d 246.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy A. Provis*, Port Washington.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *Jeffrey J. Kassel*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Yediael Yokrawn Backstrom appeals from a judgment[1] entered after a jury found him guilty of one count of second-degree sexual assault of a child, contrary to WIS. STAT. § 948.02(2) (2003–04).[2] He contends the trial court erroneously exercised its discretion in denying his motion seeking to suppress the statement he made to the prosecutor admitting sexual contact with the thirteen-year-old

---

[1] An amended judgment was entered after the original judgment making revisions to the restitution award. The amended restitution award is not pertinent to the issue on appeal.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

810

victim, V.J. He argues that the prosecutor's failure to re-advise him of his *Miranda*[3] rights before questioning him violates his privilege against self-incrimination. Because the record demonstrates that Backstrom recalled and understood his *Miranda* rights from the full and proper recitation twenty-one hours earlier, the prosecutor was not required to formally re-advise him. Accordingly, we affirm the judgment.

## BACKGROUND

¶ 2. On July 13, 2003, at approximately 11:10 a.m., Backstrom was arrested in his home and taken to the police administration building. The arrest was based on the following facts reported by V.J., then thirteen years old. She stated that on June 28, 2003, she had been babysitting her cousin Rhonda's six children. Backstrom lived with Rhonda and was the biological father of three of her children. Sometime later in the evening, Backstrom drove V.J. home. When they got to V.J.'s home, he parked the car and began asking V.J. questions about sex. He then asked her if she wanted to have sexual intercourse and she said yes. He told her to get into the backseat of the car and pull down her pants. She complied. He then pulled down his pants, put a condom on his penis and had one act of penis-to-vagina sexual intercourse. Afterwards, V.J. exited the car, and he told her not to tell anyone.

¶ 3. V.J. also reported that a few days before July 4th, she was at Rhonda's house watching a movie. She said everyone fell asleep except for her and Backstrom. He motioned for V.J. to go into the bathroom. He followed her into the bathroom and asked her to perform oral sex. She told him no and then he told her

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

to turn around and bend over. He then put a condom on and proceeded to have vaginal sexual intercourse with her from behind.

¶ 4. When Backstrom was brought to the police administration building to be questioned about these incidents, he was advised of his *Miranda* rights by Detective James Andritsos. The notification of his rights occurred at about 1:00 p.m. on July 13, 2003. Backstrom told Andritsos that he understood each of the rights read to him and that he was willing to speak with the detective. Backstrom denied having any sexual contact with V.J. After about one hour of discussion, Backstrom was placed in the jail.

¶ 5. The next morning, Assistant District Attorney Jane Carroll told Andritsos that she wanted to speak with Backstrom. Carroll had reviewed the accounting of the facts from the detective and had spoken with the victim. Carroll indicated that she wanted to assess Backstrom's credibility. At about 9:43 a.m., Andritsos brought Backstrom, who was in custody, to Carroll's office. Andritsos remained in the office while Backstrom and Carroll spoke. Carroll informed Backstrom who she was and that she was reviewing the case against him to decide what, if anything, he would be charged with. She also asked Backstrom if he recalled Andritsos advising him of his rights on the preceding day. Backstrom answered affirmatively. Carroll also asked Backstrom if he remembered what his rights were. Backstrom replied that he did. Carroll then told Backstrom that all of those rights still applied, that he did not have to speak with her if he did not want to, that he had the right to have an attorney present, and he had a right to all of the other things that Andritsos had advised him of the day before. Backstrom indicated that he understood all of that. Backstrom indicated that he

812

would speak with Carroll and did so for approximately fifteen to twenty minutes. During this conversation, he admitted having sexual contact with V.J. in his car. He denied having any sexual contact with her in the bathroom.

¶ 6. Subsequently, Backstrom was charged with two counts of second-degree sexual assault of a child.[4] He entered a not guilty plea and filed a motion seeking to suppress the statement he made to Carroll. The trial court conducted a *Miranda-Goodchild*[5] hearing to review the sufficiency of the *Miranda* warnings and assess the voluntariness of the statement Backstrom gave during his interview with the prosecutor. At the conclusion of the hearing, the trial court concluded that the *Miranda* warnings given to Backstrom by Andritsos on July 13th were properly, adequately and sufficiently given. The trial court noted that there was no dispute that the *Miranda* rights were given directly from the Department of Justice card. With respect to the conversation the next day with Carroll, the trial court made the following findings:

> After being brought into Ms. Carroll's office, [Backstrom] sat across the desk from her. She introduced herself as an assistant district attorney and someone who would determine what if any charges would be filed against him or issued against him. The detective remained in the room during that entire time which lasted approximately 15 to 20 minutes. She specifically asked the defendant if he remembered Detective

---

[4] Backstrom was originally charged with only one count of second-degree sexual assault of a child; however, an amended information was filed ultimately charging him with two counts of second-degree sexual assault of a child.

[5] *See State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

813

Andritsos. The defendant acknowledged that he did. She specifically then asked him if he remembered — or did he remember being told by Detective Andritsos or words to . . . that effect, and I'll let her statements in the record be the accurate finding here because I adopt them since they are uncontroverted, and I found them credible when Ms. Carroll stated them asking the defendant if he remembered being advised of his constitutional rights the day before in the interview with that detective. The defendant indicated that he did. She reviewed a couple of those rights, not all of them. She reviewed for example the right that he didn't have to talk to her and that he could have an attorney present during the conversation. She did not reference he could stop talking to her whenever he wanted, he could obtain an attorney or one would be appointed for him, and so on. She asked if he understood those rights. He responded that he did. She told him that those rights still apply today. The record indicates — and I so find — that he understood that.

¶ 7. Based on these findings, the trial court concluded that under the totality of circumstances, the prosecutor was not required to formally re-advise Backstrom of his *Miranda* rights. The trial court also concluded that the statement Backstrom made was a voluntary statement.

¶ 8. The case proceeded to trial and Backstrom was convicted of the first count relating to the incident in his car. Judgment was entered. He now appeals.

## DISCUSSION

¶ 9. Backstrom raises a single issue in this appeal: whether his constitutional rights were violated when the prosecutor failed to formally re-advise him of his *Miranda* rights before conducting the interview in her

office. In reviewing a motion to suppress an inculpatory statement, our standard of review is mixed. *See State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987). We will uphold a trial court's findings of historical or evidentiary facts as long as they are not clearly erroneous; however, we independently determine whether those facts resulted in a constitutional violation. *Id.*

¶ 10. The parties agree that *Miranda* warnings are required before a defendant may be questioned by a prosecuting attorney. The parties, however, disagree as to whether the *Miranda* requirement was satisfied under the facts and circumstances presented in this case. Backstrom, citing *State v. DeWeese*, 582 S.E.2d 786 (W. Va. 2003), contends that the waiver he gave to Andritsos twenty-one hours before talking to the prosecuting attorney should not be considered effective, and thus, his statement should have been suppressed. The State responds that, based on Wisconsin case law, the *Miranda* warnings Backstrom received the day before giving his statement to Carroll, as refreshed by Carroll in her office, were sufficient to satisfy the constitutional requirements. *See State v. Jones*, 192 Wis. 2d 78, 532 N.W.2d 79 (1995); *State v. Fillyaw*, 104 Wis. 2d 700, 312 N.W.2d 795 (1981); *Grennier v. State*, 70 Wis. 2d 204, 234 N.W.2d 316 (1975).

■

¶ 11. Based on the record presented, we conclude that the trial court did not err in failing to suppress Backstrom's statement. The trial court's findings, which are supported by the testimony from the *Miranda-Goodchild* hearing, are not clearly erroneous. The record demonstrates that Backstrom was properly advised of his *Miranda* rights during his conversation with Andritsos on July 13th and that he agreed to waive

those rights.[6] He then was reminded of those rights the next morning when he was brought into Carroll's office. Backstrom himself admitted during his trial testimony that he remembered Carroll asking him if he recalled Andritsos advising him of the *Miranda* warnings, and that he said he did in fact recall being read his rights.

¶ 12. Given this factual backdrop, we now review pertinent case law of this state. In *Grennier*, the defendant was arrested by a Milwaukee police officer, who read him his *Miranda* warnings several times during the morning of January 23, 1973. *Id.*, 70 Wis. 2d at 207. The defendant was read his rights for the final time at 10:45 a.m. *Id.* Then, he was taken to the Oak Creek Police Department and questioned by detectives there starting at 12:40 p.m. *Id.* at 207–08. The Oak Creek detectives again advised the defendant of his *Miranda* warnings; however, the defendant later argued that the warnings given in Oak Creek were constitutionally insufficient. *Id.* at 212. It was undisputed that the *Miranda* warnings given by the Milwaukee police were sufficient. *Id.* at 213.

¶ 13. Our supreme court held that, under these circumstances, the confession given to the Oak Creek detectives was admissible. *Id.* That conclusion was based in part on the holding in *Blaszke v. State*, 69 Wis. 2d 81, 230 N.W.2d 133 (1975), wherein the court held that when *Miranda* rights are properly administered, it is not necessary to re-administer the *Miranda* warnings at a subsequent interrogation *if* it is undisputed that the defendant understood his rights. *Grennier*, 70 Wis. 2d at 213 (citing *Blaszke*). "It would be strange indeed

---

[6] Backstrom's waiver during the initial interview is significant. If he had declined to speak with Andritsos, we would need to review different case law. *See State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987).

for this court to hold that, where within the space of a few hours a defendant has been properly advised of his rights, a subsequent confession would be vitiated by an admonition that was somewhat less than technically perfect." *Id.*

¶ 14. In applying the *Grennier* rule of law to this case, we conclude, under the totality of the circumstances, that it was not necessary for Carroll to formally re-advise Backstrom of his *Miranda* rights. It is undisputed that Backstrom had been advised of his rights the day before, and he clearly indicated to Carroll in her office that he remembered those rights and understood those rights. Under these circumstances, we conclude that Backstrom's constitutional rights were not violated and therefore the statement he made to Carroll was admissible.

¶ 15. Similarly, the holdings in *Fillyaw* and *Jones* also support our conclusion that the *Miranda* warnings Backstrom received were constitutionally sufficient. In *Fillyaw*, the defendant contended that the statement he gave to police on February 3, 1977, should have been suppressed because the recital of the *Miranda* warnings that preceded that interrogation was incomplete. *Fillyaw*, 104 Wis. 2d at 723. Our supreme court rejected his argument because he had been given correct *Miranda* warnings three times the previous day. *Id.* at 723–25.

> These prior recitals of the *Miranda* rights are clearly significant in determining whether a defendant has been adequately informed of his constitutional rights. It is not necessary to repeatedly recite the *Miranda* warnings during an investigation of the same person for the same crime in order to satisfy the constitutional requirement that the defendant be apprised of his rights.

*Id.* at 725.

817

¶ 16. In *Jones*, the defendant was twice advised of his *Miranda* rights on the morning of May 17, 1991, by a sheriff's deputy and an intake worker. *Jones*, 192 Wis. 2d at 86–90. Later that morning, a captain in the sheriff's department interviewed the defendant. *Id.* at 90–91. Before commencing the interview, the captain asked the defendant if he had been informed of his rights and the defendant acknowledged that he had. *Id.* at 91. The captain then asked if the defendant understood that those same rights still applied and the defendant said that he did. *Id.* On appeal, the defendant claimed that the captain should have re-read the *Miranda* warnings prior to the interrogation. *Id.* at 99. Once again, our supreme court rejected this argument based on the well-established law in *Fillyaw*. *Jones*, 192 Wis. 2d at 99. The court held that the circumstances in *Jones* were sufficient to satisfy the constitutional rights of the defendant. *Id.*

¶ 17. Based on this pertinent case law, we conclude under the totality of the circumstances, that Backstrom was properly advised of his rights, that he understood his rights, and that the trial court did not err in denying his motion seeking to suppress the statement he made during his interview with Carroll.[7]

*By the Court.*—Judgment affirmed.

[7] Backstrom suggests that we review this case based on the criteria set forth in a West Virginia case, *State v. DeWeese*, 582 S.E.2d 786 (W. Va. 2003). Because pertinent Wisconsin case law exists to resolve the issue in this case, we need not resort to reliance on foreign cases.