LaTender, Plaintiff in error, v. State, Defendant in error.

*No. 75–852–CR.   Argued February 1, 1977.—Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 221.)

384

For the plaintiff in error the cause was argued by *Mark Lukoff,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *John M. Schmolesky,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. The defendant, John Mark LaTender, after a trial by jury, was found guilty of second degree murder, contrary to sec. 940.02, Stats., and of burglary, contrary to sec. 943.10. He was sentenced to a term not to exceed twenty-two years for the murder conviction and a term not to exceed ten years for the burglary conviction, with the terms to be served concurrently. Postconviction motions for sentence modification and for a new trial were denied. The writs of error are taken to review the judgment of conviction and sentence and the order denying postconviction motions.

Two confessions of guilt were admitted into evidence, and one was excluded. The defendant argues that the inadmissible confession—in regard to the murder weapon —so tainted the subsequent confession that the admis-

sion of that confession constituted prejudicial error warranting a new trial.

It is also argued that the evidence was insufficient to permit the jury to conclude beyond a reasonable doubt that a burglary was committed by the defendant.

We disagree with both of these contentions and affirm the judgment and order of the trial court.

The case arises out of the murder of Father Marcellus M. Cabo, the priest of St. Anthony's Church in Neopit, Wisconsin, which occurred in the course of a burglary at the rectory where Father Marcellus resided.

The facts elicited at a *Miranda-Goodchild* hearing prior to trial and at a suppression hearing during trial show that, in the early morning hours of November 28, 1974, LaTender went to the office of the Menominee County Sheriff's Department and asked the radio dispatcher to call the sheriff's officers who were then on patrol. LaTender told the radio dispatcher that he wished to speak to the officers. Officers LeRoy Waupoose and Wilbur Wilber, on arrival at the office, escorted LaTender into the back room of the station. Without any prior questioning, LaTender volunteered the statement to the officers, "I killed Father Marcellus." Waupoose responded, "You did," to which the defendant nodded, "Yes." This confession, which was introduced at trial, was held to be admissible as a spontaneous and volunteered statement. Its admissibility is not challenged on this appeal.

After that statement was given, Waupoose went to the rectory to confirm LaTender's statement, while Wilber remained at the station with LaTender.

Although the record fails to show any formal arrest at this time, it is clear from the record that LaTender was not free to go and was in custody of Officer Wilber. Wilber asked the defendant what he did with the murder

weapon, to which the defendant responded that he threw it in the river by the dam. No *Miranda* warnings were given to the defendant, and the trial judge properly excluded this inculpatory statement and denied its admission into evidence.

While Waupoose was at the rectory and LaTender was in the custody of Wilber, the radio dispatcher called Chief Deputy Tourtillott and asked that he come to the station. Prior to his arrival at the station, the crime in respect to Father Marcellus had not been related to Tourtillott. He stated that Marcellus' name was not mentioned on the phone.

When Tourtillott arrived at the main room of the station, Wilber told him that LaTender wanted to talk to him. Wilber then told LaTender to tell Tourtillott "what he told *us*." (Emphasis supplied) Tourtillott testified that, when Wilber made that statement, he, Tourtillott, said, "[W]ait, let's go in the back room." As Tourtillott, Wilber, and the defendant were walking down the hallway, some fifteen or twenty seconds after Wilber's statement and after Tourtillott's admonition to wait, LaTender said that he had killed Father. Tourtillott, because he had not heard clearly, asked, "[W]hat," and the defendant stated, "I done in Father." The *Miranda* rights were thereafter, for the first time, read to LaTender.

In respect to each of these confessions, it is apparent from the mere recitation of the surrounding facts that they were not coerced or involuntary statements, as proscribed by *Jackson v. Denno,* 378 U.S. 368 (1964), and *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965). Accordingly, the rule of *Schwamb v. State,* 46 Wis.2d 1, 173 N.W.2d 666 (1970), upon which the Public Defender relies, is inapplicable. Therein we said:

". . . the admission of a coerced confession cannot be deemed harmless error even in the presence of other

evidence which might well have constituted independent proof of guilt beyond a reasonable doubt." (at 14)

In that case we drew a sharp distinction between the voluntariness of a confession which is mandated by *Goodchild* and the procedural requirements of *Miranda*, which are intended to preclude the admissibility of confessions, even though voluntary, if the confessor, who is subject to custodial interrogation, is not first made aware of his rights under the Fifth and Sixth Amendments.

There is not a scintilla of evidence to indicate that any of the confessions were coerced; and, accordingly, the rule of *Schwamb,* which precludes the application of the harmless-error rationale to coerced confessions, is totally inapplicable in the instant case.

The facts in this case show that the initial statements of LaTender made when he first spoke to Waupoose and Wilber were not only voluntary but volunteered. At that time LaTender, on his own volition, came to the station and asked to speak to the officers. Without being placed in custody, without being the focus in any way of an investigation, he spontaneously stated that he killed Father Marcellus. After that statement was made, it appears reasonable to conclude from the record that he was in custody and thereafter no interrogation was appropriate unless he had at first been advised of his rights under *Miranda.* Nevertheless, in response to questioning by Wilber, LaTender told where he had disposed of the weapon. This constituted custodial interrogation and was properly suppressed by the trial judge, and that confession was not put before the jury.

The last statement—that made to Chief Deputy Tourtillott—was clearly voluntary; and, moreover, the defendant's rights under *Miranda* were not infringed. We so conclude, because that statement, too, was volunteered.

See *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). LaTender was specifically admonished to wait with any statement until they had reached the back room. Instead of heeding that admonition, LaTender blurted out that he had killed Father Marcellus. Under these facts, the strictures of *Miranda* are not applicable.

The defendant on this appeal appears to argue that, because the statement to Wilber in respect to the disposition of the murder weapon violated *Miranda*, the subsequent statement made to Tourtillott constituted the "fruit of the poisonous tree" and was, therefore, inadmissible. In the defendant's brief, it is asserted:

"Once it is determined that a statement was improperly obtained from an accused, it follows that any other evidence, including a subsequent confession obtained as a result of the illegality is equally inadmissible unless the taint was obviated."

It is quite clear, putting aside the volunteered nature of the last statement, that the statement given to Wilber was not the lever which induced LaTender to talk to Tourtillott. The initial statement of Wilber was addressed to LaTender when Tourtillott came to the station. Wilber testified, "I asked him to . . . tell Officer Tourtillott what he had told Mr. Waupoose and myself." The reference clearly was not to the prior statement in regard to the disposition of the weapon, for only Wilber was present at that time. The reference was to the volunteered and constitutionally antiseptic statement originally given to Waupoose and Wilbur. That fact alone would not necessarily obviate compliance with *Miranda*, for LaTender was in custody. However, whatever taint there may have been from the prior statement in respect to the knife was wholly erased when Tourtillott told LaTender to wait until they got into the back room, but nevertheless LaTender stated that he had killed Father

Marcellus. This was a totally volunteered statement and was completely independent of the statement in respect to the weapon and free of any taint that might have been lent to the proceedings by the improper question earlier posed by Wilber. We conclude, therefore, that the trial court properly admitted the two volunteered admissions and properly excluded the statement elicited by Wilber in violation of *Miranda*.

This court will sustain a trial court's finding in respect to *Miranda-Goodchild* determinations unless such finding is contrary to the great weight and clear preponderance of the evidence. *Norwood v. State*, 74 Wis.2d 343, 246 N.W.2d 801 (1976); *Grennier v. State*, 70 Wis.2d 204, 234 N.W.2d 316 (1975); *Blaszke v. State*, 69 Wis.2d 81, 230 N.W.2d 133 (1975). The evidence adduced at the suppression hearings demonstrates that the trial judge's rulings in respect to the admissibility of LaTender's statements were correct.

*Smith v. Estelle*, 527 F.2d 430 (5th Cir. 1976), discusses circumstances in which the harmless-error rule is applicable to confessions obtained in violation of *Miranda*. That case, at 432, states:

"Confessions—unlawful but not involuntary—admitted into evidence but obtained without having given the warnings required by *Miranda* are subject to the harmless error rule."

This court reached the same conclusion in *Scales v. State*, 64 Wis.2d 485, 492, 219 N.W.2d 286 (1974).

Thus, even where a confession unlawful under *Miranda* is admitted into evidence, the harmless-error rule, depending on the circumstances, may be applicable. In the instant case, the unlawful confession to Wilber was not admitted into evidence at all. Certainly the jury could not then have been prejudiced. If, of course, the con-

fession which was excluded had furnished the impelling circumstance that motivated a subsequent volunteered confession, the "fruit of the poisonous tree" doctrine might be applicable, but the evidence is all to the contrary.

At trial the defendant elected to waive his rights under the Fifth Amendment and took the stand, but it is apparent that it was not the suppressed confession that subjectively obliged him to do so. Rather, it appears that it was the two constitutionally antiseptic confessions that impelled the decision that, under the circumstances, it would be appropriate for the defendant to waive his rights and to testify in his own behalf. It should be emphasized, however, that this is not a harmless-error case. We find no error.

The confessions presented to the jury were properly admissible as spontaneous statements. In addition, evidence in respect to the killing was presented by the defendant when he took the stand in his own behalf in respect to the murder charge. He stated that, on the night in question, as he walked past St. Anthony's rectory, he decided to steal from the priest's home because he had heard that Father Marcellus was out of town. He went home and got a knife and returned to the rectory. Because the door was locked, he broke the window, opened the latch, and entered. He put his knife on the desk and was in the process of collecting silver coins from Father Marcellus' desk when the priest came in. He stated that Father Marcellus grabbed the knife and blocked the defendant's exit. He testified that he grappled with the priest, they struggled, and the next thing he remembered was stopping himself from cutting the priest's throat. He testified that he then ran to the dam, threw the knife in the river, and then went to the police station. There is no question that the jury could have

concluded beyond a reasonable doubt from this evidence that LaTender had killed Father Marcellus.

It is also asserted that an erroneous re-instruction to the jury in respect to third-degree murder constituted prejudicial error. It is admitted that the jury was initially instructed properly. However, when the jury returned for a clarification of the instruction on third-degree murder, the judge stated:

"[S]imply because a death resulted in the commission of a *homicide* does not require that you find the defendant guilty of third degree murder . . . ." (Emphasis supplied)

Shortly thereafter, the judge, apparently *sua sponte,* realized that he had misspoken during the instructions. He advised counsel, "I used 'homicide' instead of felony. I will correct it any way you wish to have it corrected, if you wish to have it corrected." The defense counsel declined this invitation for curative instructions and said that in his opinion the jury understood the word to be "felony," because the initial instruction had been clear. He, moreover, pointed out that a correction of the instruction would merely emphasize the error, an error which trial counsel considered inconsequential. This was a strategic waiver knowingly entered into by counsel when he was fully aware that the trial judge acknowledged the right to corrected instructions and was ready to correct the error if such correction was desired.

We have frequently said that an error in instructions will be deemed waived unless appropriate objections are timely made. Here, no objection was made and the error was specifically waived for reasons that counsel thought appropriate at the time. While, under sec. 251.09, Stats., this court may reverse, even where appropriate objections have not been made, if the interest of justice so requires, in the instant case we concur with trial coun-

sel's impression that, in light of the record, the error was trivial and in no way had any effect upon the ultimate verdict.

It is also argued that the evidence was insufficient to support the conviction of burglary. Although the motion for new trial did not particularize the grounds or rationale upon which the defendant based his conclusion that the evidence was insufficient *(State v. Escobedo,* 44 Wis. 2d 85, 170 N.W.2d 709 (1969)), the brief appended to the motion particularized the evidentiary lacunae. The defendant's position is that the elements of burglary were not proved.

The elements of burglary are set forth in sec. 943.10 (1), Stats. Those elements are (1) an intentional entry, (2) without consent of the person in lawful possession, and (3) with the intent to steal or to commit a felony.

In respect to the intentional entry, the defendant's confessions, which were admitted into evidence, showed that he had been on the premises; and, moreover, blood spots on LaTender's clothing were consistent with the blood type of the deceased priest. Also, hair samples found at the site of the burglary were consistent with those of the defendant. It was not unreasonable for the jury to infer from the evidence that LaTender had made an intentional—and, in view of the broken window, a forced—entry of the premises.

It is also argued that the element of nonconsent is lacking. The defendant appears to concede implicitly, as he must, that on some facts, once proof of entry is made, the inference of nonconsent may arise. *Levesque v. State,* 63 Wis.2d 412, 217 N.W.2d 317 (1974). Once the inference arises, the burden is on the defendant to show that he had consent. It is argued that this rule is not applicable where the entry was to a church, a public building.

We conclude that the facts upon which the defendant relies are misplaced. The record is clear that the entry was to the rectory—the priest's private home—and, accordingly, it was up to the defendant to prove that he had entered with the consent of the lawful possessor. This he did not do.

While this court has declined to approve a finding and inference of the intent to steal merely from the breaking and entering in the nighttime (see *State v. Kennedy*, 15 Wis.2d 600, 113 N.W.2d 372 (1962), and *State v. Reynolds*, 28 Wis.2d 350, 137 N.W.2d 14 (1965)), we have pointed out that, where a private residence is broken into in the nighttime, little evidence is required to support the inference of the intent to steal. See *Galloway v. State*, 32 Wis.2d 414, 145 N.W.2d 761, 147 N.W.2d 542 (1966). Moreover, we stated in *Strait v. State*, 41 Wis.2d 552, 562, 164 N.W.2d 505 (1969) :

"When there is proof of an unlawful entry without consent of the person in lawful possession, in the absence of a rational explanation, proof of circumstances which would lead the ordinary person to conclude beyond reasonable doubt that the entry was with the intent to steal is sufficient to sustain a finding of guilt."

We have said that, if the only evidence is of breaking and entering, the inference of guilt referred to in *Strait* does not arise. See *State v. Hall*, 53 Wis.2d 719, 193 N.W.2d 653 (1972), and *Gilbertson v. State*, 69 Wis.2d 587, 230 N.W.2d 874 (1975). Here there was evidence that the desk had been pilfered and there were coins on the floor. The jury could beyond a reasonable doubt conclude that the entry had been made with the intent to steal.

It should also be pointed out that the state's case in respect to the murder and the burglary were tried together. There was clear and uncontroverted proof that, just prior to the time the defendant came to the police

station, he was at the rectory and there killed the priest. In view of the admitted facts in respect to the condition of the murder scene, visited shortly thereafter by Officer Waupoose—coins scattered on the floor and a broken window—there was sufficient evidence for a reasonable jury to conclude that LaTender had made an entry without the consent of the person in possession, that he entered for the purpose of stealing, and while there he had killed Father Marcellus.

The procedural posture of the case presents some problems with respect to the burglary conviction. After the state rested, the defendant rested on the burglary count and moved to dismiss. That motion was denied. The defendant then moved for a severance of the burglary count from the murder count so he could testify with respect to the murder without opening himself to cross-examination on the burglary. The court specifically refused to grant the severance but agreed that the defendant could take the stand on the murder count only. The court instructed the jury that any evidence given in the course of the defendant's testimony in respect to the murder charge could not be considered in respect to the burglary. As stated earlier in the opinion, the defendant, while testifying in respect to the murder, clearly stated that he forced an entry into the rectory and came there with the intention of stealing. The jury was admonished not to consider those facts revealed by the defendant in deliberating on the charge of burglary. We assume that the jury heeded those admonitions and cast from its collective mind the defendant's clear admission of burglary. In reviewing the sufficiency of the evidence, we, too, have confined our examination of the record in that respect to the state's case; and it is on the basis of the facts revealed in the course of the state's case, apart from the explicit admissions of the defendant, that we

reach the conclusion that the elements of the burglary were proved beyond a reasonable doubt.[1]

We are satisfied that justice has not miscarried in the instant case, and, accordingly, decline to reverse in the interest of justice under our discretionary authority set forth in sec. 251.09, Stats.

*By the Court.*—Judgment and order affirmed.

---

[1] LaTender did not move, prior to trial, for severance of offenses. Thus, he is precluded from now complaining that the jury, in spite of the court's instruction that the jury disregard all his testimony as to the burglary count, may have considered it. We note that the American Bar Association *Standards Relating to Joinder and Severance*, sec. 2.2, page 7, on timely motion would permit severance on grounds that the joinder of the murder and burglary offenses unduly limited defendant's right to testify in his own behalf. See *Cross v. United States*, 335 F.2d 987, 989 (D.C. Cir. 1964).

Though expressing no opinion as to the instant facts, we note that the trial court may refuse a defendant's request for an instruction to the jury to consider his testimony only as to one count and may refuse to deny opposing counsel the right to cross examine a defendant on any count. Where defendant decides, as a matter of strategy, to take the stand on his own behalf as to one count but not another, the better practice would be to move for severance prior to trial. If he does not do so, he risks opening himself to cross examination on matters relative to all counts. See 8 Wigmore, *Evidence* (McNaughton Rev. 1961), sec. 2276, p. 456.