STATE of Wisconsin, Plaintiff-Respondent,

v.

Leroy William BILLINGS, Defendant-Appellant.

Supreme Court

*No. 81-853. Argued November 3, 1982.—Decided February 3, 1983.*

(Also reported in 329 N.W.2d 192.)

662

For the appellant there were briefs and oral argument by *Louis B. Butler, Jr.*, assistant state public defender.

For the respondent the cause was argued by *Kirbie Knutson*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

SHIRLEY S. ABRAHAMSON, J.   This is an appeal from an order of the circuit court for Kenosha county, William U. Zievers, Circuit Judge, denying defendant Leroy Billings's post-conviction motion for a new trial. The defendant appealed from this order, and the court of appeals certified the case to this court. We accepted certification. Secs. 808.05, 809.61, Stats. 1979–80. Because we conclude that the admission into evidence of

the defendant's statements taken in violation of the defendant's fifth amendment right to counsel constituted prejudicial error, we reverse the order and remand the cause to the circuit court for a new trial.

The defendant was convicted of one count of second degree sexual assault contrary to secs. 940.225(2)(a) and 939.62(1)(b), Stats. 1979–80, and one count of trespass to dwelling, repeater, contrary to secs. 943.14 and 939.62(1)(b), Stats. 1979–80.

The defendant went to the Kenosha police station on August 19, 1978, at a detective's request. The police advised the defendant he had been accused of a sexual assault which had occurred on August 8, 1978. The police gave the defendant the standard *Miranda* warnings and asked whether he understood them. The defendant stated that he was willing to talk, and he signed a waiver of rights. The police officers asked the defendant a few questions and, according to the testimony of the police officers, at some point early in the questioning the defendant said something about an attorney. One officer testified that the defendant said either "Okay, I did it. Maybe I ought to see an attorney," or "I think I should get an attorney." In response to the defendant's comment about seeing an attorney a lieutenant of the Kenosha Police Department stated, "You need a doctor, not an attorney." The defendant then said, "Well, I will tell you all about it then."

No attorney was provided for the defendant. A police officer continued the interrogation in an interrogation room where the defendant was again given his *Miranda* warnings. A tape recording was made of the interrogation.

The circuit court (Judge Burton Scott) denied the defendant's motion to suppress his statements after concluding that the defendant had not specifically requested an attorney and that the defendant's statements to the

police during the interrogation were a voluntary product of a free and unconstrained will reflecting a deliberate choice.

At trial the jury heard the tape recording of defendant's interrogation at the police station as well as the testimony of the police officers who investigated the scene of the crime and who questioned the defendant. The police officers testified as to defendant's comments during the interrogation and as to a photograph of a shoe print in the victim's basement which matched shoes the defendant owned. The jury also heard the testimony of three other persons: the victim, who identified the defendant and described the assault; the 14-year-old neighbor boy who said he saw the defendant outside the victim's house at about the time of the assault; and the defendant.

After conviction and sentencing, the defendant filed a sec. 974.06 post-conviction motion for a new trial. The circuit court (Judge William U. Zievers) concluded that the defendant had made a specific request for counsel which had not been scrupulously honored by the police and that the defendant's statements should not have been admitted as evidence at the trial. *Wentela v. State,* 95 Wis. 2d 283, 292, 290 N.W.2d 313 (1980); *Micale v. State,* 76 Wis. 2d 370, 373, 251 N.W.2d 458 (1977). Nevertheless, the circuit court denied the defendant's motion for a new trial, because it was convinced that the evidence against the defendant was so overwhelming that the jury easily would have been able to find the defendant guilty beyond a reasonable doubt without considering the defendant's erroneously admitted statements.

The defendant appealed from the circuit court's denial of his motion for a new trial. On appeal the state concedes that the police violated the defendants' constitutional rights by failing to cease interrogating the de-

fendant after he requested counsel and that the circuit court should have suppressed the defendant's statements. The state nevertheless asks this court to affirm the conviction, arguing that the defendant's statements were voluntary, that the harmless error rule applies to the erroneous admission of the defendant's voluntary statements which were taken in violation of *Miranda* rights (a fifth amendment denial of counsel), and that the admission of the defendant's statements in this case was harmless beyond a reasonable doubt.

In contrast, the defendant urges on appeal that the police officer's continued interrogation and failure to accede to his request for counsel make the defendant's statement involuntary *per se;* that the admission of an involuntary statement can never be harmless error, *Schwamb v. State,* 46 Wis. 2d 1, 14, 173 N.W.2d 666 (1970) ; and that therefore the conviction must be reversed. The defendant further contends that even if his statements were voluntary, the harmless error rule does not apply because there is a fifth amendment denial of counsel. Finally, the defendant urges that if the harmless error rule applies, the error was not harmless in this case.

The court of appeals certified the following question to this court: "Can harmless error apply where a statement is taken after a defendant's right to counsel under *Miranda* was disregarded? As addressed by the parties on appeal, the issue might be accurately framed another way : Is a statement extracted in violation of an asserted right to counsel involuntary *per se?"*

Neither the United States Supreme Court nor this court has explicitly considered or decided whether a court can ever find harmless error when the state introduces into its case in chief statements made by an accused after he received *Miranda* warnings and after the police failed to honor his request for counsel. In

*Micale v. State,* 76 Wis. 2d 370, 251 N.W.2d 458 (1977), a case involving a fifth amendment *Miranda* denial of counsel, this court, without discussion, applied the harmless error rule.[1] In a subsequent case, *Wentela v. State,* 95 Wis. 2d 283, 290 N.W.2d 313 (1980), in which the circuit court had admitted a statement obtained in violation of the defendant's fifth amendment *Miranda* counsel rights, this court reversed the conviction without discussing whether the constitutional error was prejudicial.[2]

Because the record clearly shows that the constitutional error in this case was not harmless beyond a reasonable doubt, we need not reach the other significant constitutional questions of whether the defendant's statements were voluntary or whether as a matter of law it cannot be harmless error to admit defendant's statements which were given after the defendant received his *Miranda* warnings and the police failed to honor his request for counsel.

The standard for determining whether constitutional error is harmless, as that standard was formulated in

---

[1] In an earlier case, *Scales v. State,* 64 Wis. 2d 485, 492, 493, 219 N.W.2d 286 (1974), where no *Miranda* warnings were given and the defendant's statements were found to be voluntary, this court indicated that the introduction of the statements into evidence can be harmless constitutional error.

[2] Both *Chapman,* 386 U.S. 18 (1967), and *Harrington v. California,* 395 U.S. 250 (1969), note that some constitutional rights are so basic to a fair trial that their infraction can never be treated as harmless error.

For cases of this court discussing the right to counsel under both the fifth and sixth amendments, *see Jordan v. State,* 93 Wis. 2d 449, 287 N.W.2d 509 (1980); *Schilling v. State,* 86 Wis. 2d 69, 271 N.W.2d 631 (1978); *Leach v. State,* 83 Wis. 2d 199, 217, 265 N.W.2d 495 (1978) (Abrahamson, J., dissenting). *See also Wyrick v. Fields,* 51 U.S.L.W. 3411, 3413 (Nov. 30, 1982) (Marshall, J., dissenting).

*Chapman v. California,* 386 U.S. 18, 24 (1967), *reh'g denied,* 386 U.S. 987, and as it has been applied by this court,[3] requires the beneficiary of the constitutional error, here the state, to ". . . prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained . . . and the court must be able to declare a belief that [the constitutional error] was harmless beyond a reasonable doubt." The court determines whether the error is harmless by assessing the probable impact of the erroneously admitted evidence on the minds of an average jury,[4] *Harrington v. California,* 395 U.S. 250, 254 (1969), that is, by assessing whether there is "a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87 (1963). The court in *Chapman* explained that the "reasonable possibility standard" is equivalent to the "beyond a reasonable doubt standard," as follows:

"There is little, if any, difference between our statement in *Fahy v. Connecticut* about 'whether there is a reason-

[3] *See State v. Walberg,* 109 Wis. 2d 96, 111, n. 1, 325 N.W.2d 687 (1982); *State v. Fencl,* 109 Wis. 2d 224, 238, 325 N.W.2d 703 (1982); *State v. Zellmer,* 100 Wis. 2d 136, 150–51, 301 N.W.2d 209 (1981); *Odell v. State,* 90 Wis. 2d 149, 157, 279 N.W.2d 706 (1979); *State v. Schlise,* 86 Wis. 2d 26, 41–42, 271 N.W.2d 619 (1978); *Spencer v. State,* 85 Wis. 2d 565, 271 N.W.2d 25 (1978); *Rudolph v. State,* 78 Wis. 2d 435, 443, 254 N.W.2d 471 (1977); *Reichhoff v. State,* 76 Wis. 2d 375, 381, 251 N.W.2d 470 (1977).

[4] For discussion of the harmless error rule, *see, e.g.,* Traynor, *The Riddle of Harmless Error* (1970); Goldberg, *Harmless Error: Constitutional Sneak Thief,* 71 J. Crim. L. & Criminology, 421 (1980); Field, *Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale,* 125 U. Pa. L. Rev. 15 (1976); Note, *Harmless Constitutional Error: An Analysis of Its Current Application,* 33 Baylor L. Rev. 961 (1981); Note, *Harmless Error: The Need for a Uniform Standard,* 53 St. John's L. Rev. 541 (1979); Comment, *Harmful Use of Harmless Error in Criminal Cases,* 64 Cornell L. Rev. 538 (1979).

able possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard, although achieving the same result as that aimed at in our *Fahy* case." 386 U.S. at 24 (note omitted).

Although the *Chapman* standard is easy to state, it is not easy to apply. Courts must make an inquiry into the nature of all of the evidence that the jury heard to assess whether an error in admitting certain evidence was harmless beyond a reasonable doubt. The impact of the erroneously admitted evidence on the jurors cannot be assessed either by looking at the erroneously admitted evidence in isolation or by looking at the evidence unaffected by the error (hereafter referred to as "untainted evidence") in isolation to determine whether it is sufficient to support the conviction. The court cannot, as the United States Supreme Court has admonished, give too much emphasis to "overwhelming evidence" of guilt. *Chapman, supra,* 386 U.S. at 23. Emphasizing the sufficiency of untainted evidence independently of the erroneously admitted evidence creates a danger of substituting the court's judgment for the jury's. Rather, the court must inquire whether on the basis of all the evidence there is a "reasonable possibility" that the constitutional error "might have contributed to the conviction."

This court has posited guidelines in certain cases for assessing whether the error was or was not harmless.

For example, in *Reichhoff v. State,* 76 Wis. 2d 375, 381, 251 N.W.2d 470 (1977), this court set forth a three-pronged analysis to aid the court in determining the impact of the constitutional error involved in that case on the jurors. The three relevant factors in that case were: (1) the frequency of the error; (2) the nature of the state's case; and (3) the defense presented at trial. When all of these factors are considered, the court can evaluate the impact of the error in the context of the trial. We have found the *Reichhoff* analysis helpful in other cases.[5]

The *Reichhoff* analysis is not, however, the only approach a court may take to determine the impact of the error on the jurors' minds. Other guidelines can be used in a harmless error analysis. The state argues that the erroneously admitted evidence in this case is duplicative of the untainted evidence, that is, for example, the tainted evidence discloses the same facts as the untainted evidence and both have the same probative value and effect. If the erroneously admitted evidence merely duplicates untainted evidence, it is likely that its admission had little if any independent impact on the jury, that the error played no role or an insignificant one in the conviction, and that the court can declare a belief that the error was harmless beyond a reasonable doubt. A court's inquiry as to harmlessness does not end with its determination that the erroneously admitted evidence duplicates the untainted evidence. Regardless of the duplicative nature of the erroneously admitted evidence, the record in the particular case might reveal that the admission of the evidence was or was not prejudicial.

[5] *See State v. Fencl,* 109 Wis. 2d 224, 238, 325 N.W.2d 703 (1982); *State v. Zellmer,* 100 Wis. 2d 136, 151, 301 N.W.2d 209 (1981); *McLemore v. State,* 87 Wis. 2d 739, 757, 275 N.W.2d 692 (1979); *Rudolph v. State,* 78 Wis. 2d 435, 443, 254 N.W.2d 471 (1977).

In some cases the jury may not have been persuaded of the defendant's guilt had it not been presented with the erroneously admitted duplicative evidence. Conversely, in other cases although the erroneously admitted evidence is not duplicative, it could be clear to the court that the evidence had no impact on the conviction.

We examine the record in this case to determine whether the state is correct in arguing that because the erroneously admitted evidence is merely duplicative, the error in admitting it is harmless beyond a reasonable doubt.

Before we can determine whether the error was harmless, we must examine what evidence was erroneously admitted.

Neither the state nor the defendant specifies which of the defendant's "statements" were erroneously admitted. The record indicates that the jury heard three statements that might have been excluded because they resulted from the violation of the defendant's *Miranda* rights. We discuss them in the order in which the jury heard them.

The first statement of the defendant that the jury heard was in the testimony of Detective Ellison of the Kenosha Police Department. Detective Ellison testified: "Defendant gave us a verbal confession that he did it, and then he was asked if he would give a tape recorded statement describing just what happened and he agreed to that." There was conflicting evidence whether the defendant's statement preceded or followed the defendant's request for counsel, and the circuit court did not make an express finding regarding the timing of the statement or whether this statement was taken in violation of the defendant's *Miranda* rights.[6] We cannot

---

[6] At the suppression hearing the circuit court made the following finding of fact: "he [the defendant] then was asked a few questions and was confronted with facts such as they had eyewit-

make this finding from the record. Neither the state nor the defendant seems to consider this statement significant when each discusses the admissibility of defendant's statements or analyzes harmless error. Upon reading the record, we agree with the parties that the analysis of harmless error in this case is not affected by how we treat this aspect of Detective Ellison's testimony.

A second statement of the defendant that the jury heard was the 35-minute tape recording of the police interrogation of the defendant on August 19, 1978. The state concedes on appeal that the tape recording should have been suppressed because the questioning began after the defendant had requested counsel.

We listened to the recording, as did the jury, and found it very damaging to the defendant. The recording reflects that the police read the defendant his *Miranda* warnings and then questioned him in a fair manner. The defendant stated that he was "awful messed up that day" (the day of the assault), having ingested a substantial amount of drugs and beer. He admitted that he saw the victim sunbathing in her backyard, admired her bikini-clad "dynamite" body, went into her home, was in the basement with her, and made her remove her bikini.

When asked at various times and in various ways whether he attempted to have sexual intercourse with the victim, the defendant at different times would say "no" or "I don't think so" or "I don't believe so—no, that I'd remember." He remembered wanting to see the victim without clothes and he remembered making her

nesses, and they knew he had done it, and then he blurted out that he had done it; that during the conversation he made some statement to the effect maybe I should have a lawyer, or I think I should have a lawyer. One of the officers informed him that—something to the effect that what he needed was a doctor, not a lawyer."

remove the bikini, but he said he did not remember asking her to perform oral sex or attempting sexual intercourse. The police officer expressed surprise that the defendant could remember certain events so clearly and others not at all. The defendant answered in a way which sounds very much like a confession. The defendant said: "Well, I just don't remember. . . . Hey, look, my memory is shot. If she says I did something, I did it. You know. Well, if you want me to say it into there, you know, lock me up, I don't care, forever, what the hell." The police officer responded to the defendant's outburst as follows: "Well, we don't want you to say things that you don't know about and if you say you don't know or don't remember I'll respect your wishes then. But there are things you do remember that you told me in here. And I was just hoping that maybe you could remember the whole story just exactly as it happened."

A third statement of the defendant that the jury heard was the defendant's testimony at trial. According to the defendant, the only reason he testified was that the circuit court had allowed the tape recording of the interrogation into evidence. The defendant testified that he saw the victim sunbathing, that he entered the basement of the victim's home, and that he forced the victim to remove her bikini. He further testified that he did not intend to assault the victim and that he could not remember any assaultive conduct. For purposes of this appeal, the state apparently views the defendant's testimony at trial as erroneously admitted evidence and in applying the harmless error standard the state excluded "both the defendant's statement and his testimony." (State's brief, p. 15.)

Were we to look at the defendant's erroneously admitted statements in isolation, we might conclude that there is a reasonable possibility that the defendant's own words contributed to the conviction.

He placed himself at the scene of the assault and did not categorically deny his guilt or proclaim his innocence. If we look at the untainted evidence in isolation, we might conclude that there was sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt. But we do not look at items of evidence in isolation. We look at the erroneously admitted evidence and the untainted evidence in context. In determining the impact of the erroneously admitted evidence in this case, we consider whether the erroneously admitted evidence is merely duplicative of the untainted evidence.

The defendant's statements are not duplicative of the testimony of the victim's neighbor because the defendant's statements do not disclose the same facts as does the neighbor's. The neighbor testified he saw the defendant outside the victim's house prior to the assault. The defendant's statements put the defendant in the basement of the house, the scene of the crime, not just outside the house before the assault. Thus this case differs from *Wilson v. Henderson*, 584 F2d 1185, 1189 (2d Cir. 1978), upon which the state relies, where the defendant's erroneously admitted statement that he was at the scene of the crime confirmed the statements of several eyewitnesses.

The defendant's statements are duplicative of other evidence. The defendant's statements disclose several of the same facts disclosed by parts of the victim's testimony as well as by the photograph of the shoe print, namely, that the defendant was in the basement and that the defendant made the victim remove her bikini.

Our examination of the duplicative nature of the erroneously admitted statements of the defendant cannot end here. The defendant's statements do more than simply duplicate the facts disclosed in the untainted evidence. As we noted previously, although the defendant did not expressly admit or explicitly confess to having sexually assaulted the victim, some parts of his statements came very close to constituting a confession. The

defendant alternately denied any sexual assault and denied remembering committing a sexual assault. The probable impact of the defendant's statements on the minds of the jury was that the defendant's selective memory and the defendant's assertions that he only wanted to see the victim's body without the bikini made the defendant's denials of guilt incredible. The defendant's statements do more than simply duplicate facts disclosed in the untainted evidence.

Applying the duplicative evidence analysis and the *Chapman* standard, we cannot declare that there was no reasonable possibility that the evidence complained of might have contributed to the conviction or that the state has demonstrated beyond a reasonable doubt that the defendant's statements did not contribute to the verdict. Therefore we cannot state that it is our belief that the constitutional error was harmless beyond a reasonable doubt. The state had a strong case against the defendant, but the erroneously admitted evidence in this case was of such a nature that we conclude that the jury would have been influenced by it. Accordingly we reverse the order of the circuit court and remand the cause to the circuit court for a new trial.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded to the circuit court for a new trial.

DAY, J. *(dissenting).* I dissent and would affirm the conviction.

The defendant never did admit to committing the crime of second degree sexual assault. In fact, he specifically denied it. I agree with that portion of Justice Ceci's dissent that would hold that admission into evidence of the defendant's voluntary statements, follow-

ing what the state concedes was a request for an attorney, was in fact harmless beyond a reasonable doubt.

I am authorized to state that Justice Callow joins in this dissent.

LOUIS J. CECI, J. *(dissenting)*. The majority opinion is bred in speculation, nurtured by massive quantities of wishful thinking, and has given birth to a new and, to this writer, frightening concept of criminal jurisprudence. I must therefore vigorously dissent.

The clear and unmistakable signal being given here is that the mere utterance of the word "attorney" or "lawyer," when a suspect is being questioned, will deny the prosecution the right to continue any questioning. Anything said after those magic words will be locked into a constitutionally protected error, and its use will be denied to the prosecution regardless of the existence of other overwhelming evidence and any admission made by the defendant prior to his utterance of such words. Neither *Miranda* nor its progeny dictates such an absurd result. This court, while giving lip service to the rights and concerns of the victim,[1] enlarges the rights of an accused to such a degree that these rights have no boundaries.

While I have my doubts that it was error to admit the defendant's tape-recorded statement, I believe that the

[1] In *State v. Stubbendick*, 110 Wis. 2d 693, 329 N.W.2d 399, 406, 707, also decided today, this court approved the increase in the defendant's sentence for second degree sexual assault, explaining:

"He obviously, with his demonstrated modus operandi, deliberately chose to attack her in the privacy of her living quarters. She will now no longer feel completely secure in her own home. The law respects the sanctity of a person's dwelling. No longer will this victim be able to relax and feel secure in the one area where all citizens should be able to feel safe, that is, in her home. She has been attacked in that 'safe' area and will always have doubts concerning her security."

alleged error in this case was, in any event, clearly harmless.

As the majority notes, the question of whether a court can find harmless error when the state introduces into its case-in-chief statements made by an accused after he received *Miranda* warnings and after the police failed to honor his request for counsel has not been explicitly considered or decided by either this court or the United States Supreme Court. It is clear that the use of a coerced or involuntary confession cannot be deemed harmless error even in the presence of other evidence which might well have constituted independent proof of guilt beyond a reasonable doubt. *Schwamb v. State,* 46 Wis. 2d 1, 14, 173 N.W.2d 666 (1970) ; *Mincey v. Arizona,* 437 U.S. 385, 398 (1978) ; *see also Payne v. Arkansas,* 356 U.S. 560 (1958) ; *Chapman v. California,* 386 U.S. 18 (1967) ; *McKinley v. State,* 37 Wis. 2d 26, 154 N.W.2d 344 (1967). What is not clear is whether a confession obtained in violation of a defendant's *Miranda* rights, after he has been informed of those rights, is involuntary *per se.*[2] The United States Supreme Court, in *Miranda v. Arizona,* 384 U.S. 436 (1966), seemed to indicate that it was:

[A]ny statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

*Id.* at 474. However, decisions since *Miranda* have shown that such a *per se* rule does not exist. These cases have

[2] This court has already decided that confessions which are unlawful because they were obtained in the absence of *Miranda* warnings, but were nevertheless not involuntary, are subject to the harmelss error rule. *LaTender v. State,* 77 Wis. 2d 383, 391, 253 N.W.2d 221 (1977) ; *Scales v. State,* 64 Wis. 2d 485, 492, 219 N.W.2d 286 (1974).

pointed up a distinction between involuntary statements and statements that are unlawful because they were obtained in violation of a defendant's *Miranda* rights.

In *Harris v. New York,* 401 U.S. 222 (1971), the supreme court approved the admission of a defendant's post-arrest statements for impeachment purposes, even though the police had failed to first inform him of his right to appointed counsel. Two later decisions clearly make a distinction between unlawful and involuntary statements. In *Oregon v. Hass,* 420 U.S. 714 (1975), the defendant was in police custody and had been given his *Miranda* warnings. While on his way to the police station he asked to telephone his attorney, but was told that he could not do so until he arrived at the station. Before arriving, however, he made incriminating statements to the police. The court allowed the use of the statements for impeachment purposes because it appeared that the statements were voluntary and trustworthy. In *Mincey v. Arizona,* the court reiterated that harmless error cannot apply to the admission of involuntary statements, but that unlawful but voluntary statements were admissible for impeachment purposes. 437 U.S. at 397–98.

It must be noted, of course, that the statements in *Mincey, Harris* and *Hass* were admitted only for impeachment purposes. Such a situation may well present a stronger case for admitting voluntary statements obtained in violation of *Miranda,* since a defendant should not be able to commit perjury by hiding behind the shield of his *Miranda* rights. *Harris,* 401 U.S. at 226.

However, in cases where a defendant's statements were admitted as a part of the state's case-in-chief, courts have indicated that harmless error might apply. *Wilson v. Henderson,* 584 F.2d 1185, 1189 (2d Cir. 1978); *U.S. v. Collins,* 462 F.2d 792, 797 (2d Cir. 1972), *cert. denied* 409 U.S. 988 (1972). In both *Wilson* and *Collins,* the defendant argued that his right to cut off questioning

had not been scrupulously honored. The court in those cases ultimately concluded that the defendant's Fifth Amendment privilege against self-incrimination had not been violated by the continued questioning because of the lack of coercive circumstances. The court in *Wilson* nevertheless stated:

Even if the admission of the statement to [the detective] had been improper [under *Miranda*], we would be inclined to find the error harmless.

584 F.2d at 1189. In *Collins*, the court noted that

even if [the defendant's] confession were in response to [the agent's] request, it was not made involuntarily.

462 F.2d at 797.

In *Micale v. State*, 76 Wis. 2d 370, 251 N.W.2d 458 (1977), the defendant affirmatively stated that he understood his rights after his *Miranda* warnings had been read to him. The defendant also stated that " 'he couldn't afford an attorney.' " *Id.* at 373. The questioning continued, and the defendant made incriminating statements. The confession was erroneously admitted into evidence as part of the state's case-in-chief. The state relied heavily on the confession, since its other evidence was not strong. This court applied a test of harmless error and held that the admission of the confession was prejudicial and required reversal of the conviction. *Id.*

Under this analysis, which I think states the better rule, even if a statement is obtained in violation of an asserted *Miranda* right, the error might be harmless if the tactics employed are noncoercive.

I believe that the instant case involves, at the most, the admission into evidence of an unlawful but noncoerced statement. As the court of appeals noted:

Those Wisconsin cases in which the harmless error rule was found to be inapplicable involve coercive tactics

considerably more repugnant than merely telling a defendant he needs a doctor rather than a lawyer.[3]

The record clearly demonstrates that Billings' statement was voluntary. Indeed, the tape recording shows that he was questioned in a fair and noncoercive manner. Moreover, after the initial reading of his *Miranda* rights, Billings was twice again informed of those rights, once with the waiver of rights he executed and, shortly thereafter, during the taped interrogation. Before trial, Billings had moved to suppress his statement, arguing that he might have been intoxicated or under the influence of drugs at the time he was questioned and that, therefore, his statement had not been voluntarily given.[4] The trial court found that the statement was "the voluntary product of a free and unconstrained will reflecting a deliberateness of choice."[5] As this court has noted on several occasions, whether a statement is voluntary and not the result of coercion is determined by reference to the totality of the circumstances in which it was given. *State v. Wedgeworth,* 100 Wis. 2d 514, 524, 302 N.W.2d 810 (1981); *McAdoo v. State,* 65 Wis. 2d 596, 223 N.W.

---

[3] *See, e.g., McKinley v. State,* 37 Wis. 2d 26, 154 N.W.2d 344 (1967); *State v. Hoyt,* 21 Wis. 2d 284, 128 N.W.2d 645 (1964). *Cf. Bradley v. State,* 36 Wis. 2d 345, 153 N.W.2d 38, *reh'g denied* 155 N.W.2d 564 (1967).

[4] Since the intoxication issue was not raised in the appellant's post-conviction motion, the trial court's decision on the motion did not discuss how the voluntariness of the appellant's statement was affected by his alleged state of intoxication.

[5] At the *Miranda-Goodchild* hearing, Billings argued that his statement was involuntary because he was under the influence of alcohol and drugs at the time he made the statement. On this question, the court found that Billings was of average intelligence, that he was twice advised of his rights after the request for an attorney, that his statements regarding what he remembered and what he did not remember were entirely consistent, that he was functioning in the same state as he did at his place of employment and that *Miranda* had been complied with.

2d 521 (1974); *Grennier v. State,* 70 Wis. 2d 204, 234 N.W.2d 316 (1975). The defendant's personal characteristics must be carefully balanced against any pressures to which he was subjected in order to induce the statement. *Wedgeworth,* 100 Wis.2d at 524; *State v. Wallace,* 59 Wis. 2d 66, 81, 207 N.W.2d 855 (1973). At the hearing, there was testimony that Billings did not appear to have been under the influence of drugs. Moreover, the trial court had the opportunity to listen to the tape-recorded statement and draw its own conclusions about the defendant's condition. On review, conflicting factual evidence must be resolved in favor of the trial court's finding. *State v. Shaffer,* 96 Wis. 2d 531, 544, 292 N.W.2d 370 (Ct. App. 1980).

The majority opinion asserts that "the record clearly shows that the constitutional error in this case was not harmless beyond a reasonable doubt." (*Supra* at 666.) The majority attempts to minimize the significance of certain facts and omits others in order to justify its conclusion that the erroneously admitted evidence was not merely "duplicative" of untainted evidence.

The majority states that the defendant's statements are not duplicative of the testimony of the victim's neighbor, because the neighbor testified that he saw the defendant outside the victim's house before the assault, and the defendant's statements put the defendant in the basement of the house, the actual scene of the crime. In fact, the neighbor's testimony placed the defendant on the victim's property, inside a chain link fence separating it from the adjoining property (certainly not more than twenty feet from the rear door). Using a common-sense approach, such facts would be sufficient to place a suspect at "the scene of the crime."

Moreover, when one considers the photograph of the defendant's shoe print in the basement (which matched the shoes he was wearing the day he went to the police

station), the conclusion is inescapable that the defendant's testimony is merely duplicative of the untainted evidence. Additionally, the victim's testimony, which also placed the defendant in the basement of the victim's home, could properly be characterized as "overwhelming." The victim did not merely identify the defendant. Her description of him was so detailed and accurate that the artist's composite sketch of the assailant was recognized as being the defendant by an anonymous caller, who instructed the police to go to the service station where the defendant worked. Thus, contrary to the majority's assertion, this case is not distinguishable from *Wilson v. Henderson,* 584 F.2d 1185, 1189 (2d Cir. 1978), where the court, in explaining why it would be inclined to find the error of admitting an unlawfully obtained statement to be harmless, noted:

The allegedly tainted evidence did no more than place [the defendant] at the scene of the crime, a fact which was confirmed by the testimony of several eyewitnesses. The statement, therefore, was cumulative evidence, and its admission was harmless beyond a reasonable doubt.

As in *Wilson v. Henderson,* the erroneously admitted evidence was cumulative, since it only placed Billings at the scene of the crime. The majority, referring to the defendant's lapses of memory, states that "some parts of his statements came very close to constituting a confession." (*Supra* at 673.) Apparently, the majority would like to ignore the fact that Billings never admitted that any sexual contact occurred. It is not beyond dispute that the defendant's testimony at trial was damaging to him. Even with his selective lapses of memory, the jury did not, as the majority asserts, find the defendant's testimony wholly incredible. Billings did indeed benefit from taking the stand since, as to the second count, the jury did not find him guilty of entry into a dwelling

with intent to commit a felony[6] (second-degree sexual assault) as charged, but instead only found him guilty of the lesser included offense of trespass to dwelling.[7] The defendant's statements did not establish the elements of second-degree sexual assault; the victim's testimony did. As noted above, she had positively identified Billings as her assailant. She testified that Billings did more than make her remove her bathing suit; indeed, she stated that she fought him for approximately ten to fifteen minutes. The victim's resulting injuries would have dispelled any doubt concerning the truth of her version of the incident. It is my firm belief that under the "reasonable possibility standard" of *Chapman v. California,* any error in this case was harmless beyond a reasonable doubt.[8]

In addition, as I stated at the outset of this dissent, I view the majority decision as an inappropriate extension of *Miranda.* Therefore, I would affirm the judgments of conviction.

---

[6] Section 943.10(1)(a), Stats.

[7] Section 943.14, Stats.

[8] As the majority notes, the judgment by a reviewing court that an error is harmless beyond a reasonable doubt is to be based on the court's own reading of the record and on what seems to have been the probable impact of the confession on the minds of an average jury. *Harrington v. California,* 395 U.S. 250, 254 (1969).

This court held in *Wold v. State,* 57 Wis. 2d 344, 357, 204 N.W.2d 482 (1973), that the test for harmless error should be based on "reasonable *probabilities.*" (Emphasis added.) Because the untainted evidence against the defendant, considered in the context of all the evidence, was overwhelming and because the improperly admitted evidence was merely cumulative, the error here was harmless under either definition of "harmless beyond a reasonable doubt."