STATE of Wisconsin, Plaintiff-Respondent,

v.

Warren A. WEGNER, Defendant-Appellant.

Court of Appeals

*No. 83–247–CR. Submitted on briefs March 20, 1984.—
Decided March 27, 1984.*
(Also reported in 348 N.W.2d 603.)

---

For the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang,* assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.    Warren A. Wegner appeals from a judgment of conviction following a jury trial finding him guilty of second-degree sexual assault, contrary to sec. 940.225(2)(e), Stats., and an order denying his post-conviction motion for a new trial. The primary issue before us is whether Wegner's inculpatory statement taken during the course of a police interrogation was admissible at trial. Because the statement was taken after Wegner invoked his right to counsel and pursuant to an interrogation initiated by the police, we conclude that it was obtained in violation of his constitutional rights under the fifth and fourteenth amendments. Because the admission of this statement constituted prejudicial error, we reverse and remand with directions for a new trial.

Subsequent to conviction and sentencing on the second-degree sexual assault charge, Wegner filed post-conviction motions. He requested a new trial on a number of

grounds, including a claimed violation of his right to counsel under the fifth and fourteenth amendments by use of his inculpatory statement obtained on October 25, 1981.[1] The trial court denied the motion basing its decision on the following facts.

Subsequent to his arrest on Friday afternoon, October 23, 1981, Wegner was taken to the Kenosha county jail where he was given his *Miranda* warnings and questioned by police officer Maegard. When asked if he wanted an attorney, Wegner responded that he could not afford one.[2]

On Sunday morning, October 25, 1981, Detective Barrette and Inspector Mielke went to the county jail to interview Wegner. They read him his *Miranda* rights from a standard form. He signed the form indicating he understood his rights. Barrette asked Wegner if he wanted an attorney, and in response, Wegner stated that he did not know any. Barrette then provided Wegner with a phone book, a list of attorneys, and the number for the state public defender's office.[3] Wegner testified that he did not call an attorney because of lack of money.

---

[1] Wegner also argued for a new trial on grounds that: (1) the statement was obtained in violation of his fifth amendment right to silence; (2) the admission of the statement at trial violated his fifth amendment right against self-incrimination, and (3) the jury instructions submitted relating to sec. 940.225(2)(e), Stats., unconstitutionally shifted the burden of proof on the issue of consent to the defendant and were unconstitutionally vague as applied to this case. Because of the result reached on the issue of Wegner's right to counsel under the fifth amendment, we decline to rule on these other issues.

[2] Although not explicitly found by the trial court, apparently questioning of the defendant stopped at this point and was not resumed until Sunday morning, October 25.

[3] The trial court also found that Wegner had access to a telephone from the time he was first questioned late Friday afternoon until he was interviewed on Sunday morning. However, he apparently did not call an attorney during this period.

Barrette stated that had Wegner specifically asked for
an attorney, he "would have gotten him one or had him
[Wegner] get one."

During the initial part of the interview, Wegner was
visibly upset. The police gave him a cup of coffee, which
helped settle him down. Eventually Detective Barrette
obtained an inculpatory statement by means of a question
and answer format.

The trial court determined that Wegner had invoked
his right to counsel on October 23 when he stated, in
response to Deputy Maegard's questioning, that he could
not afford an attorney. However, the court also ruled
that the inculpatory statement made on October 25 in
response to questions from Detective Barrette was ad-
missible because Wegner knowingly and intelligently
waived his rights to counsel and to remain silent. The
trial court further determined that Wegner voluntarily
made the statement.

The key question on appeal is what effect Wegner's
invocation of his right to counsel on October 23 had on
the inculpatory statement obtained by police during sub-
sequent police-initiated contact and questioning on Octo-
ber 25.

The result in this case is governed by the holding in
*Edwards v. Arizona*, 451 U.S. 477 (1981). In *Edwards*,
the Court stated:

[A]lthough we have held that after initially being ad-
vised of his Miranda rights, the accused may himself
validly waive his rights and respond to interrogation,
. . . the Court has strongly indicated that additional safe-
guards are necessary when the accused asks for counsel;
and we now hold that when an accused has invoked his
right to have counsel present during custodial inter-
rogation, a valid waiver of that right cannot be estab-
lished by showing only that he responded to further
police-initiated custodial interrogation even if he has
been advised of his rights. We further hold that an
accused, such as Edwards, having expressed his desire

to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484–85 (citation and footnote omitted).

The facts in *Edwards* are similar to those before us.[4] In holding that the statement was obtained in violation of his right to counsel, the Supreme Court emphasized that Edwards had invoked his right to counsel on a prior occasion and that without making counsel available, the police returned and initiated the subsequent interrogation.

We . . . emphasize that *it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.* In concluding that the fruits of the interrogation initiated by the police on January 20 could not be used against Edwards, we do not hold or imply that Edwards was powerless to countermand his election or that the authorities could in no event use any incriminating statements made by Edwards prior to his having access to counsel. *Had Edwards initiated the meeting on January 20,* nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial. The Fifth Amendment right identified in Miranda is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver.

---

[4] Edwards, subsequent to a lawful arrest, was taken to the county jail for questioning. He invoked his right to counsel, and questioning stopped. The next morning, two different police officers returned to the jail to question him. The officers informed Edwards of his *Miranda* rights and eventually obtained an inculpatory statement.

*Id.* at 485–86 (emphasis added). In this case, the trial court's finding that Wegner had previously invoked his right to counsel is supported by the evidence. It is undisputed that the police initiated the next contact with him on Sunday morning, and the statement was obtained by means of the police interrogation.[5] Under the holding in *Edwards,* we can reach no other conclusion than that Wegner's inculpatory statement, obtained after proper invocation of his right to counsel and subsequent to police-initiated interrogation, was obtained in violation of his fifth and fourteenth amendment rights.

The State attempts to distinguish *Edwards* by arguing that Wegner had not clearly asserted his right to counsel and because he was provided access to counsel prior to reinterrogation. We disagree with both attempts to circumvent the applicability of *Edwards.*

We agree with the trial court that Wegner invoked his right to counsel on Friday, October 23, when he was first questioned by police. "If [the defendant] indicates

---

[5] In its decision, the trial court did not specifically find that the police initiated the contact or the questioning on Sunday morning. However, in regard to this interview, the trial court did make the following comments:

At this point the defendant began answering questions. Barrette told him what it was they wanted to talk about.

. . . .

Barrette then questioned Wegner based upon an investigation report of Detective Andrekus dated 10/15/81, a statement of M.G., the minor complainant, dated 10/16/81, Exhibits 2, 3 and 4, and a verbal statement from Andrekus who told him what Wegner was charged with when he asked Barrette to take a statement from Wegner. Barrette asked questions from the defendant and wrote down the information as it was told to him.

We infer from these statements and the total absence of facts in the record suggesting the opposite conclusion that the statement obtained on Sunday morning was obtained after police-initiated contact and questioning.

in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning . . . ." *Micale v. State,* 76 Wis. 2d 370, 373, 251 N.W.2d 458, 460 (1977), quoting *Miranda v. Arizona,* 384 U.S. 436, 444–45 (1966). The trial court correctly concluded that Wegner's statement on Friday— that he could not afford an attorney—constituted an invocation of his right to counsel. *Micale* at 373, 251 N.W.2d at 460.

We reject the State's second argument based on what we conclude is the per se rule of *Edwards,*[6] namely, once a suspect has invoked his right to counsel, subsequent re-interrogation by the police is prohibited *unless counsel is present or the suspect initiates the contact.* That the holding in *Edwards* was intended as a per se rule is supported by the recent decision in *Solem v. Stumes,* 52 U.S.L.W. 4307 (U.S. Feb. 29, 1984). Although the specific issue in *Solem* involved the retroactive application of *Edwards,* certain language in the opinion substantiates this reading of the *Edwards* holding.

*Edwards* established a bright-line rule to safeguard pre-existing rights, not a new substantive requirement. Before and after *Edwards* a suspect had a right to the presence of a lawyer, and could waive that right. *Edwards established a new test for when that waiver would be acceptable once the suspect had invoked his right to counsel: the suspect had to initiate subsequent communication. Prior to Edwards the Court had "strongly indicated that additional safeguards are necessary when the accused asks for counsel," 451 U.S., at 484, and had several times referred to an accused's right to be free from further questioning once he invoked his right to counsel, see id., at 485. Edwards* did not overrule any

---

[6] We certified to the supreme court the issue of whether the majority opinion in *Edwards* established a per se rule that an invocation of right to counsel prohibits the police from subsequently initiating a custodial interrogation with the suspect in the absence of counsel. Certification was denied.

prior decision or transform standard practice. Thus, it is not the sort of "clear break" case that is almost automatically nonretroactive.

*Edwards nonetheless did establish a new rule. We do not think that the police can be faulted if they did not anticipate its per se approach.*

*Id.* at 4309 (emphasis added). The concurring opinion in *Solem* further supports the position that *Edwards* was meant to establish this per se rule.

In *Edwards v. Arizona,* 451 U.S. 477 (1981), this Court determined that the accused's waiver of his right to counsel during custodial interrogation was involuntary because he was subjected to renewed interrogation without counsel present after having invoked that right. It was uncertain at the time whether the Court merely intended to apply *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), that had held that waivers of counsel are effective only if they are "an intentional relinquishment or abandonment of a known right or privilege," a determination made by reference to "the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused." See 451 U.S., at 482. Alternately, *Edwards could have been interpreted as establishing a new per se rule that, once the right to counsel has been invoked, a waiver of that right, however voluntary under the Zerbst standard, can never be valid if made in response to further police questioning.* See *Edwards, supra,* at 488–490 (JUSTICE POWELL, concurring in the result). Confusion as to the proper interpretation of *Edwards* persisted in subsequent cases. See *e.g., Oregon v. Bradshaw,* 462 U.S. —— (1983) ; *id.,* at —— n 1 (JUSTICE POWELL, concurring in the judgment) (citing lower court cases). *The Court now states clearly, relying in part on Bradshaw, that Edwards established a new per se rule and to that extent overruled Johnson v. Zerbst, supra.*

*Id.* at 4311 (Powell, J., concurring) (emphasis added; footnote omitted).

Given this per se approach, the actions taken by the police in this case to secure counsel for Wegner are irrelevant. Despite the "reasonable efforts" taken by the

police to obtain counsel, the reinterrogation on Sunday morning was improper because Wegner had not initiated the contact and counsel was not present.[7]

The standard for determining whether constitutional error is harmless is whether the error complained of did not contribute beyond a reasonable doubt to the verdict obtained. *State v. Billings,* 110 Wis. 2d 661, 666–67, 329 N.W.2d 192, 194–95 (1983). To determine whether the error is harmless, this court must assess the "probable impact of the erroneously admitted evidence on the minds of the average jury," that is, assess "whether there is 'a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Id.* at 667, 329 N.W.2d at 195. (Citations and footnote omitted).

In evaluating the impact of the error, we must consider all of the evidence heard by the jury. Neither the evidence erroneously admitted, nor the evidence untainted by the error, can be looked at in isolation. *Id.* at 668, 329 N.W.2d at 195.

Applying these standards and guidelines, we conclude that there was a reasonable possibility that Wegner's erroneously admitted statement might have contributed to the conviction. The State has not satisfied us beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the conviction of the defendant.

*By the Court.*—Judgment and order reversed and remanded for a new trial.

[7] A reading of *Edwards* so as to establish a per se rule makes the analysis required by certain existing case law in Wisconsin unnecessary. *See, e.g., Wentela v. State,* 95 Wis. 2d 283, 292–99, 290 N.W.2d 312, 316–20 (1980) (a case setting out factors to be considered when determining whether a suspect's invocation of right to counsel has been "scrupulously honored").